RESEK, APPELLANT, *v.* CITY OF SEVEN HILLS ET AL., APPELLEES.
NOVAK, APPELLEE, *v.* KELLEY ET AL., APPELLEES.

(Nos. 44781 and 44784—Decided January 6, 1983.)

*Mr. Joseph W. Bartunek,* for appellant Thomas Resek in case No. 44781.

*Mr. Joseph C. Domiano,* for appellee city of Seven Hills in case No. 44781.

*Mr. G. Timothy Marshall,* for appellee David Novak in case No. 44784.

*Mr. Allen Kacenjar,* for defendant-appellee in case No. 44784.

*Mr. Joseph W. Bartunek* and *Mr. John A. Polito,* for intervening defendant-appellant in case No. 44784.

*Mr. Paul S. Lefkowitz,* for intervening defendant Gartman in case No. 44784.

JACKSON, J. Thomas Resek appeals from two decisions of the Court of Common Pleas of Cuyahoga County. In the first case (No. 44781), he appeals from a decision of the court which affirmed a determination of the Seven Hills Civil Service Commission that he should be removed from his position as Chief of Police of the city of Seven Hills. In the second case (No. 44784), he appeals from a decision by the court which allowed the city of Seven Hills to appoint a new chief of police. No separate issues of law or fact are raised in case No. 44784; the resolution of this second case depends entirely upon the resolution of case No. 44781.[1] In other words, if appellant Thomas Resek was properly removed from his post as Chief of Police, then the city of Seven Hills was entitled to appoint a new chief.

I

Appellant Resek raises three assignments of error in his appeal in case No. 44781. The first two assigned errors involve alleged procedural irregularities, which are considered together in Part I of this opinion. The third assigned error

[1] In response to questions from the court during oral arguments of the appeal on the merits, counsel for appellant Resek agreed with this conclusion in two separate instances.

challenges the sufficiency and weight of the evidence against appellant, and is discussed in Part II of this opinion.

Appellant contends that the trial court erred in deciding this case upon the record made before the Seven Hills Civil Service Commission, that it erred in assigning the costs of the transcript to him, and that it abused its discretion in refusing to authorize appellant to present additional evidence.[2]

Ohio law provides two separate and distinct avenues of appeal from a decision by a municipal civil service commission. The first method is provided by R.C. 124.34, which states in part:

"In the case of the suspension for any period of time, or demotion, or removal of a chief of police or a chief of a fire department or any member of the police or fire department of a city or civil service township, the appointing authority shall furnish such chief or member of a department with a copy of the order of suspension, demotion, or removal, which order shall state the reasons therefor. Such order shall be filed with the municipal or civil service township civil service commission. Within ten days following the filing of such order such chief or member of a department may file an appeal, in writing, with the municipal or civil service township civil service commission. In the event such an appeal is filed, the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority. *An appeal on questions of law and fact may be had from the decision of the municipal or civil service township civil service commission to the court of common pleas in the county in which such city or civil service township is situated. Such appeal shall be taken within thirty days from the finding of the commission.*" (Emphasis added.)

The provisions of R.C. Chapter 2505, governing procedure on appeal, are applicable to proceedings brought in court on appeal from a decision by a municipal civil service commission pursuant to R.C. 124.34. *In re Locke* (1972), 33 Ohio App. 2d 177 [62 O.O.2d 276]. R.C. 2505.21 defines the procedure to be followed in an appeal on questions of law and fact:

"* * * An appeal taken on questions of law and fact entitles the party to a hearing and determination of the facts de novo which shall be upon the same or amended pleadings. The court shall review the final order, judgment or decree upon such part of the record made in the trial court as any party may present to the court and such additional evidence as upon application in the interest of justice the court may authorize to be taken, such evidence to be presented in the manner and form prescribed by the court."

It is apparent from this statute that the decision to allow or not to allow additional evidence in an appeal taken on questions of law and fact rests within the discretion of the reviewing court.

Another provision of R.C. Chapter 2505 assigns the initial cost of preparing a transcript to the appellant. R.C. 2505.08.[3]

---

[2] Assignment of Error No. 1

"The trial court erred in requiring appellant to file and assume the costs of preparation of the record from the civil service commission hearing."

Assignment of Error No. 2

"The trial court erred in refusing to permit appellant to introduce evidence in addition to the civil service commission record."

[3] R.C. 2505.08 provides, in pertinent part:

"The cost of the production of the transcript of testimony or of the bill of exceptions shall be paid initially by the party perfecting the appeal, reimbursement therefor to be made in the assessment of the cost by the court."

This cost is ultimately borne by the party who loses on appeal. R.C. 2505.41.[4]

The second method that a municipal chief of police may use to appeal an adverse decision of a civil service commission is under R.C. Chapter 2506. In such an appeal, the reviewing court is confined to the transcript, if it appears on the face of said transcript or by affidavit filed by appellant that one of the following circumstances enumerated therein exists:

"* * * (A) The transcript does not contain a report of all evidence admitted or proffered by the appellant.

"(B) The appellant was not permitted to appear and be heard in person or by his attorney in opposition to the order appealed from:

"(1) To present his position, arguments and contentions;

"(2) To offer and examine witnesses and present evidence in support thereof;

"(3) To cross-examine witnesses purporting to refute his position, arguments and contentions;

"(4) To offer evidence to refute evidence and testimony offered in opposition to his position, arguments and contentions;

"(5) To proffer any such evidence into the record, if the admission thereof is denied by the officer or body appealed from.

"(C) The testimony adduced was not given under oath.

"(D) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from or the refusal, after request, of such officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.

"(E) The officer or body failed to file with the transcript, conclusions of fact supporting the order, adjudication or decision appealed from; in which case, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call as if on cross-examination, any witness who previously gave testimony in opposition to such party." R.C. 2506.03.

The cost of the transcript is assessed as costs of the appeal under R.C. 2506.02.

The standard of review is different on an appeal under R.C. 124.34 and R.C. Chapter 2505 than it is in an appeal under R.C. Chapter 2506. In an appeal *de novo* on questions of law and fact, under R.C. 124.34 and 2505.21, the reviewing court is free to substitute its judgment for that of the administrative tribunal. In an appeal under R.C. Chapter 2506, the court must give "due deference" to the administrative resolution of evidentiary conflicts. *University of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65].

The appellant in the case at bar, Thomas Resek, chose to prosecute his appeal to the court of common pleas under R.C. 124.34 and R.C. Chapter 2505. In doing so, he assumed responsibility for initially paying for preparation of the transcript of the proceedings before the municipal civil service commission.

Furthermore, under R.C. Chapter 2505, allowance of additional evidence is entirely discretionary with the court. Counsel for appellant Resek proffered in-

---

[4] R.C. 2505.41 provides:

"When an appeal is dismissed, or a judgment or order is affirmed, the prevailing party shall recover all court costs, including the cost of bills of exception.

"When a judgment or order is modified, the court may apportion all court costs, including the cost of bills of exception, between the parties in such manner as is equitable.

"When a judgment or order is reversed, all court costs, including the cost of bills of exception, shall abide the final judgment or order in the action or proceedings."

to the record the additional testimony he would have offered into evidence, if additional evidence had been allowed.[5]

Resek had been charged with unlawfully releasing a man named Michael Buck, who was arrested with gambling slips and an amount of cash. It was also charged that Resek removed the slips and cash from police custody. The testimony proffered by Resek's counsel on his behalf was that Resek gave the money ($903) to a man named Jimmy Girard, who in turn was to return it to Buck. This proffered testimony is entirely consistent with the charge against Resek, and with the trial court's findings that Resek was guilty of dereliction of duty when he released Buck and disposed of the evidence against him. The trial court did not abuse its discretion when it refused to admit the proffered testimony into evidence, as additional evidence under R.C. 2505.21.

The first two assignments of error are not well-taken.

## II

The trial court found appellant guilty of three of the charges lodged against him, and upheld his dismissal by the city of Seven Hills. Appellant contends that the decision of the trial court is not supported by sufficient evidence, and is against the weight of the evidence.[6] The findings of the trial court on each of these charges, and the evidence in support of the findings, is set forth below.

### A. Appellant Resek's Attempt to Influence the Vote of a Member of the Civil Service Commission

The trial court found:

"Attempting wrongfully to influence a civil service commission member in violation of ORC 124.58 and Civil Service Commission Rule Number IV, Sec. 9(1).

"The Court finds by clear and convincing evidence that three or four days after Seven Hills Mayor Richard Ganim was defeated in his 1977 bid for re-election to that office he requested his then friend Thomas Egan to resign from the Planning Commission and accept an appointment to the Civil Service Commission. Egan agreed to the proposal and subsequently received several phone calls from appellant informing Egan as to how he should vote concerning credits for an applicant for promotion in a civil service matter; appellant also participated with Mayor Ganim and another police officer in a close door conference just prior to a civil service meeting to clarify to Egan how he was to vote * * * in regard to the position of the same promotional applicant.

"The vote in question was intended by appellant to award one applicant in question (Gartman) efficiency points which purportedly would raise him from a failing grade to second place in the eligibility list. Whether such points would have the effect of changing the position on the list of any applicant is not at issue. The fact remains that appellant on several occasions, personally solicited a favor from a member of the commission in contravention of Rule IV(9)(i) of the Rules of the Civil Service Commission. (Supra.) Further, in furnishing to Thomas Egan the special information to change the positions of promotional applicants and in telling Egan that he was to vote with Bill Shieve on the issue * * * whether to improve the prospects of Officer Gartman or injure the prospects of Officer Cremona was in direct violation of R.C. 124.58.

"Removal of police personnel pursuant to R.C. 124.34 is fully justified by these violations."

The findings of the court are supported by the testimony of Commissioner Egan, and are consistent with the Rules

---

[5] This proffer is reproduced in the Appendix to this opinion.

[6] Assignment of Error No. 3

"The judgment of the trial court is contrary to law and against the manifest weight of the evidence."

of the Civil Service Commission of the city of Seven Hills.

Sergeant Ronald Gartman, a friend of Resek's, took the civil service examination for lieutenant but received a failing grade. On several occasions, Mayor Ganim and Chief Resek urged Egan to vote to award Gartman credits for efficiency and seniority in service, which would have advanced him in rank on the lieutenant's exam. This would have been in direct contravention with Rule IV(14) of the Rules and Regulations of the Civil Service Commission of the city of Seven Hills, which provides in part:

"(c) CREDIT FOR EFFICIENCY AND SENIORITY IN PROMOTIONAL EXAMINATIONS.

"Credit for efficiency and seniority in service as provided for and defined in Sections 124.23 and 124.31 of the Revised Code shall not be a part of, but shall be a credit to be added to the applicant's earned grade resulting from the competitive examination provided the applicant receives a passing earned grade in the competitive examination."

Commissioner Egan testified that Mayor Ganim asked him to resign from the planning commission and to accept appointment to the civil service commission. Within a day after Egan was sworn in, Resek called and asked him to give Gartman some efficiency points, to place him ahead of another police officer named Cremona and to give Gartman a passing grade. Several other telephone calls followed from Resek and Ganim.

On December 15, 1977, Egan, Ganim, Resek and Gartman met in Ganim's office. Egan gave the following description of that meeting:

"I asked several questions. I was puzzled because to knock Cremona off would be one problem; but to put Gartman on and give him enough points to give him over a passing grade would have still put him only second [to Officer Reddish].

"I particularly asked Ron, 'What's so great about being second on any list?' and

he said, 'If something happens to a guy that's first, then you're first,' and he gave me a wink; but at that time, somebody called Gartman out of the room, something to do about the party out in this room, and Tom Resek was still there.

"I asked Tom, I said, 'What's the good of going through all of these problems?' and I said, 'Even if this Cremona would come back and sue us if we were wrong, what's the use of having Gartman second? What good is it going to do him if the other — if Reddish was going to be appointed?'

"He said, 'Because I'll guarantee you Reddish will never make it through his probationary period.'

"He gave me a big grin. I'm not so naive what he was talking about, so I shut up. I didn't like what was going on."

Rule IV of the civil service commission states in part:

"9. FRAUDS AND EXAMINATIONS PROHIBITED.

"No person or officer shall: (i) personally solicit a favor from any member of the commission, appointing officer or have any person in his behalf solicit a favor."

Moreover, R.C. 124.58 provides, in part:

"No person or officer shall willfully or corruptly, by himself or in co-operation with one or more persons, defeat, deceive, or obstruct any person in respect of his right of examination, appointment, or employment according to sections 124.01 to 124.64 of the Revised Code, or to any rules or regulations prescribed pursuant to such sections * * *."

The testimony by Egan was sufficient to establish violations of the foregoing rule and statute. It was appellant's position that Seven Hills Civil Service Examination Rule IV(14)(c) was inconsistent with state law, and that he merely "educated" Egan as to this fact. It appears from Egan's testimony, however, that appellant Resek was soliciting a favor from Egan, and that this was one

step in an attempt to obstruct Officers Reddish and Cremona from obtaining an appointment. The finding of the court on this issue is supported by the evidence.

### B. Appellant's Release of Michael Buck

The trial court found:

"The Court finds by clear and convincing evidence that appellant ordered officers [in] his command to release a prisoner, one Michael Buck; further to desist from making any reports concerning his arrest and to place money ($903.00) and betting slips confiscated during the arrest of Michael Buck in appellant's office. Appellant further advised these officers that he and another officer would handle the investigation of the Buck affair on the day following. This order was made by phone to the police station from appellant's home in the midst of an investigation by on-duty police.

"These officers completed certain of their reports in contravention of the appellant's order and in fear of possible charges of false arrest. Contrary to his stated purpose, no investigation of this affair was ever the subject of an official report by appellant nor was any receipt ever obtained for the money ($903.00) which appellant testified he personally gave to one Jimmy Girard ostensibly to give to its owner, the man arrested with it, Michael Buck. * * * As the appellant stated * * * 'If it went to the rightful owner, I don't know.'

"In his defense, appellant testified that the investigating officer (Reddish) came to his office on the day following the arrest and said 'I think I'm just going to keep the money. I think I'm entitled to that much. We let him go.' * * * The Court finds it incredible that appellant would take no action concerning this alleged statement by an underling, that he would hold the money himself for a week, as he claims he did, and then give it for delivery to someone known by him not to be its owner.

"Appellant obstructed his officers in their investigation of Michael Buck, and hindered by confiscation any prosecution in regard to the money and betting slips found. Appellant failed to perform his lawful duties in the criminal proceeding concerning Michael Buck on dereliction of his duty. Further, appellant tampered with evidence as prohibited by R.C. 2921.12(A)(1)."

Appellant's objection to this finding of the court is that the court erred in placing more credibility in the testimony of Officers Reddish and Zadzilka than in his own testimony. In his brief on appeal, he notes that he once had Reddish disciplined for taking a greater amount of money for a traffic ticket than he should have. He also notes that Officer Zadzilka admitted stating, on a prior occasion, that if Chief Resek were reappointed he would find it very difficult to work. Appellant testified that Reddish made the decision to release Buck and also made the decision to keep the betting slips and Buck's money. According to appellant, Reddish came into his office the next working day and said, "I think I'm going to keep the money." Appellant allegedly told Reddish to leave his office, and said "If you're going to charge him, charge him." Several days or weeks later, after speaking to the prosecutor, appellant returned the money to Buck by giving it to James Girard, and discarded the betting slips.

This court is persuaded that the testimony of Officers Reddish and Zadzilka is far more credible than the testimony of Resek. The trial court did not err in finding appellant guilty of dereliction of duty and tampering with evidence.

### C. Solicitation of Campaign Funds for Mayor Ganim

The trial court stated, in its final order:

"The Court finds by clear and convincing evidence that appellant sold tickets to fund raising activities for Mayor

Richard Ganim in contravention of ORC 124.57."

In the hearing before the civil service commission, appellant admitted that he sold tickets for a political fund raising event to Police Officers, Plant, Fechko, and Hirsch, and that he knew that these funds would go to Mayor Ganim's re-election campaign. On appeal, Resek states that since Gartman and Egan also helped raise money for Ganim, that they also should have been prosecuted. The evidence discloses that Gartman received a six-month suspension from the civil service commission; charges were not brought against Egan, who is no longer a public official.

Appellant also claimed to be ignorant of the prohibition against political activity among members of the classified service which is clearly provided in R.C. 124.57.[7]

Appellant's defenses — "ignorance of the law" and "others have done it" — are not recognized at law.

This court of appeals is persuaded that the court of common pleas did not err in finding that appellant Resek was properly terminated from his position as Chief of Police for the city of Seven Hills.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

PRYATEL, C.J., and CORRIGAN, J., concur.

Appendix

The proffer of appellant's additional evidence was as follows:

"MR. POLITO: Plaintiff would have presented witnesses at this hearing to testify involving the following particulars: Jimmy Girard would have been presented and would have testified that the money involved in the Buck incident was given to him at Buck's request and that the money was given to him by Chief Resek.

"Additionally, we would have presented Peter Lograsso, Police Prosecutor for the City of Seven Hills, who would have testified and corroborated Chief Resek's testimony that he, Lograsso, advised Resek to return the money in the Buck incident if no charges were to be made.

"Further, Plaintiff would have presented Robert Buck, who would have testified that he told Resek to give the money to Girard, and further testimony would have adversely reflected on the credibility of Patrolman Zadzilka.

"Additionally, Plaintiff would have presented Margaret Salerno, who would testify that she was a matron at the Seven Hills Police Department and had known that the derringer in Gartman's possession was known to have been recorded in a police property book and that she so advised Law Director William Slivka.

"Further, Plaintiff would have called William Slivka, Law Director of the City of Seven Hills, to corroborate the testimony of Margaret Salerno."

---

[7] R.C. 124.57 provides that:

"No officer or employee in the classified service of the state, the several counties, cities, and city school districts thereof, and civil service townships, shall directly or indirectly, orally or by letter, solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription, or contribution for any political party or for any candidate for public office; nor shall any person solicit directly or indirectly, orally or by letter, or be in any manner concerned in soliciting any such assessment, contribution, or payment from any officer or employee in the classified service of the state and the several counties, cities, or city school districts thereof, or civil service townships; nor shall any officer or employee in the classified service of the state, the several counties, cities, and city school districts thereof, and civil service townships, be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions."