**BARKER, Appellant,**

v.

**KATTELMAN et al., Appellees.**

[Cite as *Barker v. Kattelman* (1993), 92 Ohio App.3d 56.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920811.

Decided Dec. 15, 1993.

*Hardin & Hill* and *Stephen S. Lazarus,* for appellant.

*Donnellon, Donnellon & Miller* and *Terrence M. Donnellon,* for appellees.

HILDEBRANDT, Judge.

Paul S. Barker ("appellant") appeals from the judgment of the Hamilton County Court of Common Pleas which upheld the termination of appellant as a Sharonville police officer by Paul Kattelman and the Sharonville Civil Service Commission ("appellees"). We affirm.

## I. FACTS

The record before the court below was generated on February 6, 1992, and February 9, 1992, in hearings before a board of the civil service commission. The board consisted of three attorneys and included Thomas Keating, Sharonville's city solicitor, as its chairperson. During the proceedings below, the common pleas court permitted appellant to supplement the record with the Sharonville Police Department rules manual.

The record that has been transmitted for our review discloses that appellant was appointed a Sharonville police officer in June 1989. At that time, Mary Jo Deffinger ("Deffinger") was employed by the police department in the capacity of a police officer auxiliary and clerk dispatcher. According to the appellant, he and Deffinger developed a close friendship.[1] Appellant admitted that he often visited Deffinger at her home, unannounced. He further stated that Deffinger would often suggest that appellant stop to see her while he was on duty patrolling her neighborhood. Appellant would frequently telephone Deffinger, often in response to her messages to police headquarters. Appellant contended that he had an open invitation to visit or call Deffinger. He further contended that Deffinger, who was unmarried, wanted more of a relationship than that to which appellant was willing to commit since he was married and had a family. Appellant testified that he wished to terminate the relationship with Deffinger.

Appellant's version of the events was contradicted by Deffinger's testimony. She maintained that at first, she found appellant to be quiet and shy. However, appellant began visiting her at her residence during the early hours of the morning.[2] Appellant also telephoned, and as time progressed, the frequency of the visits and calls increased.

1. Appellant described his relationship with Deffinger as "an affair of the hearts." He maintained, however, that the relationship was not physical.

2. Appellant's work hours were eleven in the evening until seven in the morning. Deffinger worked the preceding shift. Except for the period from May 1991 to October 1991, Deffinger was a resident of Sharonville.

Deffinger testified that appellant told her that he was unhappy in his marriage, and that he loved Deffinger and desired a physical relationship. Deffinger maintained that appellant would follow her when she went out socially. She alleged that appellant told her that he would kill her if he caught her with someone else.

Appellant's visits to Deffinger's residence were witnessed by other police officers. While Deffinger expressed her fear of appellant to other officers, she conceded that she did not communicate the above events to appellant's superiors until the Sharonville Police Department initiated an investigation into appellant's conduct.

The events of this cause came to a head on November 23, 1991. On that morning, appellant, while on patrol, attempted to telephone Deffinger between 1:00 a.m. and 2:00 a.m. Appellant expected that Deffinger would be home because earlier in the evening she had indicated to appellant that she would be there by that time. There was no answer, nor did Deffinger's answering machine activate in the usual manner. Appellant became concerned for Deffinger's safety.[3]

Appellant next went to Deffinger's residence, arriving at approximately 2:30 a.m. Appellant noticed that the lights inside the house were on, which was not ordinarily the case at that time of the morning. Moreover, Deffinger's automobile was not in its usual parking place but was instead parked behind the house. Additionally, there was an unfamiliar vehicle parked in Deffinger's garage.

Appellant radioed to police headquarters to utilize the Law Enforcement Automated Data System ("LEADS") (a statewide computerized information system and network established for criminal justice agencies and administered by the Ohio State Highway Patrol, see Ohio Adm.Code 4501:10–01) to obtain information concerning the owner of the strange vehicle. Appellant ascertained that it was owned by one Steve Cook. Appellant then went on to his patrolling duties and returned to Deffinger's residence at approximately 4:00 a.m. At this time, appellant used a key that he had obtained from Deffinger to enter her residence.[4]

---

**3.** At some point during the events *sub judice,* Deffinger had told the appellant she was depressed and that she had contemplated suicide.

**4.** There was great divergence in appellant's version and Deffinger's version of how appellant came into possession of this key. Appellant testified that Deffinger gave it to him to facilitate appellant's looking in on her. Deffinger testified that appellant badgered her for the key and that she relented because she was tired of appellant's repeated requests. Appellant maintained that he had been in possession of the key for several days and had used it during the morning of November 21, 1991, while Deffinger was at home, without incident.

Upon entering the residence, appellant announced his presence. Deffinger, who had been sleeping, confronted appellant and became enraged. Deffinger screamed obscenities at appellant and demanded that he leave. Appellant responded by accusing Deffinger of having sexual relations with Steve Cook. Appellant discarded Deffinger's key, told her that their relationship was over and left.[5]

Following these events, the Sharonville Police Department commenced an investigation into appellant's conduct on November 23, 1991. The investigation centered upon appellant's use of the LEADS information for appellant's own concerns and the entry into Deffinger's residence.

On December 11, 1991, appellant was charged by the appointing authority with unlawful and improper conduct. Specifically, appellant was charged as follows:

"Officer James Barker is in violation of Ohio Revised [*sic*] Code 4501:2–10–06(B) and 2911.21–(A3). Also Sections 105.002(4), 120.002(3), and 120.002(8) of the manual of rules and regulations for the Sharonville Police Department, which state:

"O.R.C. [*sic*] 4501:2–10–06(B):

"Data accessed through LEADS and other interfaced systems shall be restricted to the use of duly authorized law enforcement and/or criminal justice agencies for performance of their criminal justice duties. The data shall not be sold, transmitted, or disseminated to any nonlaw enforcement agency, noncriminal justice agency or unauthorized person. All participating agencies will assume responsibility for, and enforce, system security and integrity.

"O.R.C. 2911.21–(A3)

"(A) No person, without privilege to do so, shall do any of the following:

"(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access.

"Section 105.002(4):

"All Sharonville Police Officers and Police Employees shall perform the functions of their respective offices without favor or prejudice—they shall not engage in unlawful or improper practices.

---

5. At the time of these events, Deffinger was caring for her sister's children. Deffinger's mother was also present and witnessed these events. The Cook automobile had been borrowed by Deffinger's sister.

"Section 120.002(3):

"They shall do their utmost to maintain harmonious relationships with their associates by courteous and considerate demeanor, and shall guard against any feeling of envy, jealousy and/or any other emotion or feeling that would tend to create friction, strife or confusion, and shall absolutely refrain from any conversation—official or unofficial—that would tend to discredit the Sharonville Police Department or any member thereof, except where such conversation, during the course of accepted and authorized procedure, is legitimately essential for the good of the department.

"Section 120.002(8):

"They shall conduct themselves at all times, whether on or off duty, in such a manner as to be exemplary to the good conduct of the general public, and in accordance with high ethical standards."

On December 19, 1991, the appointing authority conducted a pre-disciplinary hearing. As a result of that hearing, the appointing authority concluded that appellant had violated the above police department rules and appellant was terminated on January 8, 1992. Appellant initiated an appeal of his termination to the civil service commission. As described above, a board of the commission heard evidence pursuant to that appeal. On February 13, 1992, the board issued the following findings of fact and conclusions of law:

"1. The actions of Officer Barker constitute a violation of Section 105.002(4) of the Sharonville Police Department Rules and Regulations in that officer Barker engaged in unlawful acts—that is, an unauthorized use of the police computer system and the unauthorized entry into the residential premises of other individuals.

"2. The actions of Officer Barker in attempting to continue to maintain a close personal relationship with Clerk Deffinger constituted sexual harassment, which thereby created friction between employees Barker and Deffinger, and directly contributed to morale loss and friction among all police department employees.

"3. The actions of Officer Barker in attempting to continue the close personal relationship with Clerk Deffinger and use of poor judgment in his continued relationship with Clerk Deffinger caused a deterioration in the harmonious relationship necessary among all employees of the police department, which constitutes a violation of Section 120.002(3) of the Sharonville Police Department Rules and Regulations Manual.

"4. The conduct of Officer Barker, while in uniform and within the residence of Mary Jo Deffinger, and his continued sexual harassment of Clerk Deffinger, brought discredit to the Sharonville Police Department thereby constituting a

violation of Section 120.002(8) of the Sharonville Police Department Rules and Regulations Manual.

"5. The Board further concludes that the decisions of the appointing authority of the City of Sharonville were supported by the preponderance of substantial credible evidence, and were therefore warranted, and the immediate termination of Officer James Barker is hereby upheld."

Appellant appealed the decision of the commission to the court of common pleas. Following that court's review, an entry was placed of record in which the court affirmed the appellant's termination, reasoning:

"By a preponderance of substantial, reliable and probative evidence, upon a review of the record on the whole, the Court hereby finds that (A) Appellant has violated the Ohio Administrative Code Section 4501:2–10–06, Ohio Revised Code Section 2913.04, and the Rules and Regulations of the Regional Computer Center concerning unlawful dissemination of information received through the LEADS system by Appellant's unauthorized and personal use of the LEADS computer system to query a license plate on the evening of November 23, 1991. These actions are in violation of Section 105.002(4) of the Sharonville Police Department Rules and Regulations Manual.

"(B) Appellant did knowingly make an unauthorized entry in the residential property of Mary Jo Deffinger on the evening November 23, 1991 in violation of Section 105.002(4) of the Sharonville Police Department Rules and Regulations Manual."

From the trial court's judgment, appellant brings this timely appeal in which he advances the following assignments of error:

"FIRST ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of appellant in finding that there was a preponderance of reliable, probative and substantial evidence that [appellant] knowingly made an unauthorized entry into the residential property of Ms. Deffinger on November 21, 1991, in violation of Section 105.002(4) of the Sharonville Police Department Rules and Regulations Manual.

"SECOND ASSIGNMENT OF ERROR

"The trial court erred as a matter of law in finding that appellant violated the rules and regulations of the Regional Computer Center and/or R.C. 2913.04, and/or sexual harassment.

"THIRD ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of appellant in finding that there was a preponderance of reliable, probative and substantial evidence that [appellant]

violated Ohio Administrative Code 4501:2–10–06 in violation of Section 105.002(4) of the Sharonville Police Department Rules and Regulations Manual.

"FOURTH ASSIGNMENT OF ERROR

"The evidence was insufficient to support a finding that appellant violated Section 120.002(3) of the Sharonville Police Department Rules and Regulations.

"FIFTH ASSIGNMENT OF ERROR

"The evidence was insufficient to support a finding that appellant violated Section 120.002(8) of the Sharonville Police Department Rules and Regulations.

"SIXTH ASSIGNMENT OF ERROR

"The trial board erred to the prejudice of the appellant by confirming the penalty of termination imposed by the appointing authority, said penalty being excessive in light of totality of facts presented, including appellant's work history.

"SEVENTH ASSIGNMENT OF ERROR

"The lower court erred as a matter of law in failing to reverse the decision of the trial board based on the Sharonville City Solicitor's participation as chairman of the trial board in this matter."

## II. STANDARD OF REVIEW

R.C. 124.34 provides:

"The tenure of every officer or employee in the classified service of the state and the counties, civil service townships, cities, city health districts, general health districts, and city school districts thereof, holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office. A finding by the appropriate ethics commission, based upon a preponderance of the evidence, that the facts alleged in a complaint under section 102.06 of the Revised Code constitute a violation of Chapter 102., section 2921.42, or section 2921.43 of the Revised Code may constitute grounds for dismissal. Failure to file a statement or falsely filing a statement required by section 102.02 of the Revised Code may also constitute grounds for dismissal.

"In any case of reduction, suspension of more than three working days, or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons

therefor. Such order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate.

"Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review or the commission. In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.

"In cases of removal or reduction in pay for disciplinary reasons, either the appointing authority or the officer or employee may appeal from the decision of the state personnel board of review or the commission to the court of common pleas of the county in which the employee resides in accordance with the procedure provided by section 119.12 of the Revised Code.

"In the case of the suspension for any period of time, or demotion, or removal of a chief of police or a chief of a fire department or any member of the police or fire department of a city or civil service township, the appointing authority shall furnish such chief or member of a department with a copy of the order of suspension, demotion, or removal, which order shall state the reasons therefor. Such order shall be filed with the municipal or civil service township civil service commission. Within ten days following the filing of such order such chief or member of a department may file an appeal, in writing, with the municipal or civil service township civil service commission. In the event such an appeal is filed, the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority. An appeal on questions of law and fact may be had from the decision of the municipal or civil service township civil service commission to the court of common pleas in the county in which such city or civil service township is situated. Such appeal shall be taken within thirty days from the finding of the commission."

R.C. 2505.05 directs:

"The notice of appeal described in section 2505.04 of the Revised Code shall conform, in the case of an appeal of a final order, judgment, or decree of a court, with the Rules of Appellate Procedure or the Rules of Practice of the Supreme Court and shall designate, in the case of an administrative-related appeal, the final order appealed from and whether the appeal is on questions of law or questions of law and fact. In the notice, the party appealing shall be designated the appellant, and the adverse party, the appellee. In the case of an administrative-related appeal, the failure to designate the type of hearing upon appeal is not

jurisdictional, and the notice of appeal may be amended with the approval of the appellate court for good cause shown."

R.C. 2506.03 reads, in part:

"(A) The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code * * *."

R.C. 2506.04 provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

In *Harvey v. Cincinnati Civ. Serv. Comm.* (1985), 27 Ohio App.3d 304, 306, 27 OBR 360, 362–363, 501 N.E.2d 39, 42, this court explained:

"The Supreme Court has stated that a hearing before a court of common pleas pursuant to R.C. 2506.01 resembles a *de novo* proceeding in that R.C. 2506.03 specifically provides that such an appeal 'shall proceed as in the trial of a civil action' and allows for the introduction of new or additional evidence. *Duduko-vich v. Housing Authority* (1979), 58 Ohio St.2d 202, 206–207 [12 O.O.3d 198, 201–202, 389 N.E.2d 1113]; *Cincinnati Bell v. Glendale* (1975), 42 Ohio St.2d 368, 370 [71 O.O.2d 331, 332–333, 328 N.E.2d 808, 809]. Further, R.C. 2506.04 requires that the court examine the 'substantial, reliable and probative evidence on the whole record.' The court of common pleas is therefore presented with a hybrid form of review, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111 [17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267]; *Budd Co. v. Mercer* (1984), 14 Ohio App.3d 269, 273 [14 OBR 298, 302–303, 471 N.E.2d 151, 155–156], in that it resolves both questions of law and questions of fact. The court applies the law to the evidence that was presented to the administrative agency, but acts as a finder of fact in regard to the new evidence; then, reviewing the entire record, the court determines whether the agency's decision was 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence.' R.C. 2506.04.

"In undertaking this hybrid form of review, however, the court of common pleas must give 'due deference' to the administrative agency's resolution of

evidentiary conflicts, *Univ. of Cincinnati v. Conrad, supra* [63 Ohio St.2d], at 111 [17 O.O.3d at 67, 407 N.E.2d at 1267]; *Resek v. Seven Hills* (1983), 9 Ohio App.3d 224, 226 [9 OBR 395, 397–399, 459 N.E.2d 566, 568–569], and may not blatantly substitute its judgment for that of the agency. *Dudukovich v. Housing Authority, supra* [58 Ohio St.2d], at 207 [12 O.O.3d at 201–202, 389 N.E.2d at 1117]." (Footnote deleted.)

In *Armstead v. Lima City Bd. of Edn.* (1991), 75 Ohio App.3d 841, 843–844, 600 N.E.2d 1085, 1086–1087, the court observed:

"R.C. 2506.04 provides that the judgment of the court of common pleas in an administrative appeal may be appealed to the court of appeals on questions of law.

"The scope of review for an appellate court on questions of law is set forth in *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852, at fn. 4, where the court concluded:

" 'This statute [R.C. 2506.04] gives the common pleas court power to weigh the evidence * * * [and] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law' * * *. *Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court.'* [Emphasis added.]

"Thus, as to questions of law, an appellate court's scope of review is limited to a consideration of whether the common pleas court abused its discretion."

## III. DISCUSSION

■ We have set forth above the appellant's assignments of error as well as the various provisions of the rules, codes and statutes that the charging instrument accused appellant with violating. We shall address assignments of error one, two and three together, since they essentially challenge the weight and sufficiency of the evidence to support the lower court's judgment.[6]

With respect to the matter of appellant's use of the LEADS computer to obtain the name of the owner of the vehicle that was parked in Deffinger's garage, Ohio Adm.Code 4501–10–06 provides in part that:

---

6. Included in appellant's second assignment of error is an allegation that the lower court found that appellant was guilty of sexual harassment. Assignments four and five allege, respectively, that the court found that appellant violated Sections 120.002(3) and 120.002(8) of the Sharonville Police Department rules and regulations. We have quoted the lower court's judgment above, and it is silent as to these matters. In fact, appellees concede that these conclusions by the trial board were not sustained by the lower court, and, therefore, are not reviewable by this court.

"(B) Data accessed through LEADS and other interfaced systems shall be restricted to the use of duly authorized law enforcement and/or criminal justice agencies for performance of their criminal justice duties." [7]

Additionally, R.C. 2913.04(B) states:

"No person shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, or computer network without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, or computer network or other person authorized to give consent by the owner."

Appellant argues that a violation of the Ohio Administrative Code is not an unlawful practice. He further maintains that it was error for the court below to find that he violated R.C. 2913.04, as that statute was not part of the charging instrument nor was it considered by the trial board.

■ Appellant's arguments are misplaced. In its review of this cause, it was incumbent upon the lower court to consider the order *sub judice* according to the standard set forth in R.C. 2506.04. Our review of the record convinces us that a reasonable factfinder could conclude that appellant utilized the LEADS system to determine the owner of the vehicle in Deffinger's garage out of jealousy and not for a legitimate criminal justice purpose, in contravention of Section 105.0002(4) of the department's rules, which mandates, in part, that a police officer shall perform the function of his office without favor or prejudice.

■ Next, we address the second finding of the lower court in which it determined that appellant's entry into Deffinger's residence on November 23, 1991, was unauthorized and violated section 105.002(4). For the reasons cited in our discussion of appellant's use of the LEADS system, we conclude that the lower court did not err. Accordingly, appellant's first, second and third assignments of error are overruled.

■ In his sixth assignment of error, appellant contends that the trial board erred by confirming the penalty imposed by the appointing authority because the penalty was excessive in light of appellant's work history. This is not a proper assignment of error, as it does not allege an error by the court below that was prejudicial to the appellant. See App.R. 12.

■ While the appellant raised this claim in his assignments of error before the lower court, this matter was not addressed in that court's decision. Indeed, it was not required to do so.

---

7. As noted above, this section of the Ohio Administrative Code was incorrectly preceded by "O.R.C." in the charging instrument.

In *Schira v. Stow* (1990), 69 Ohio App.3d 841, 843–844, 591 N.E.2d 1321, 1322, the Summit County Court of Appeals determined that in an appeal pursuant to R.C. 2506.04, the court of common pleas is not required to answer every assignment of error advanced by an appellant. Rather, the common pleas court's inquiry is limited to whether the order of the commission is supported by the preponderance of substantial, reliable and probative evidence.

For the forgoing reasons, appellant's sixth assignment of error is overruled.

██ In his seventh and final assignment of error, appellant urges that the trial court erred by failing to reverse the decision of the trial board because of the participation of the city solicitor as chairperson. This matter was raised by the appellant for the first time in the court below. The record before the trial board demonstrates that appellant did not object to the solicitor's participation at a time when any alleged error could have been cured. Under these circumstances, it was waived. In *In re Disqualification of Pepple* (1989), 47 Ohio St.3d 606, 607, 546 N.E.2d 1298, 1299, Chief Justice Moyer stated:

"In the absence of extraordinary circumstances, an affidavit of disqualification should not be used to disqualify a judge after lengthy proceedings have taken place in the case. *In re Disqualification of Light* (1988), 36 Ohio St.3d 604, 522 N.E.2d 458. A party may be said to have waived the right to obtain a judge's disqualification when the alleged basis therefor has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has participated in the proceedings. See, generally, Annotation, Waiver or Loss of Right to Disqualify Judge by Participation in Proceedings—Modern State Civil Cases (1983), 24 A.L.R. 4th 870."

Accordingly, appellant's seventh assignment of error is overruled.

## IV. CONCLUSION

We have overruled appellant's first, second and third assignments of error for the reason that the lower court did not err in determining that the appellees' order was supported by a preponderance of substantial, reliable and probative evidence on the whole record.

We have overruled the sexual harassment issue of appellant's second assignment of error as well as appellant's fourth and fifth assignments because the court below did not sustain the appellees' order as it pertained to those issues.

We have overruled appellant's sixth assignment of error on the ground that it is not an assignment of error directed to the lower court. Finally, we have rejected appellant's seventh and final assignment of error, as the matter raised therein was not properly preserved for appeal.

Having passed upon appellant's appeal in the manner set forth above, we affirm the judgment of the court of common pleas.

*Judgment affirmed.*

DOAN, P.J., and M.B. BETTMAN, J., concur.