DECISION.
{¶ 1} On September 3, 2000, defendant-appellant Matthew Moning, a Cincinnati police officer assigned to the Cincinnati Police Division impound lot, used the computer terminal at the impound lot to obtain access to the Regional Crime Information Center ("RCIC") database to run a query on James Heileman. The RCIC is one of three databases available to law enforcement personnel to investigate the criminal history of a subject. The other two databases are the Law Enforcement Automated Data System ("LEADS"), a state computerized information network administered by the Ohio State Highway Patrol, and the National Crime Information Center ("NCIC"), which provides national crime information data.
{¶ 2} Access to the law enforcement databases is restricted. Police officers may only run queries and use the information for a "legitimate law enforcement purpose." Each police agency using the databases must sign a "users agreement" that states that the data will be used only for legitimate law enforcement purposes. Cincinnati police officers are informed of the restrictions on the access to the law enforcement databases and are trained in the proper use of the systems.
{¶ 3} Moning and James Heileman had grown up in the same area and both frequented a neighborhood bar, but the men did not get along. Moning took a copy of the query he had run on Heileman, which showed that Heileman had a previous drug conviction, to the bar. Moning called Heileman out of the bar and handed him a copy of the query results. Heileman returned to the bar, keeping the copy of his printout. Later, Heileman called an acquaintance at the Regional Enforcement Narcotics Unit ("RENU") to inquire about why Moning had been able to run a records check on him. At the time Moning ran the query on him, Heileman was not under investigation for any suspected criminal activity. Heileman's call to RENU triggered an investigation into Moning's use of the computer to obtain access to the RCIC data. Moning was indicted for unauthorized use of property, in violation of R.C. 2913.04(B), which provides,
 No person shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, computer network, telecommunications device, tele-communications service, or information service or other person authorized to give consent by the owner.
 Following a jury trial, Moning was convicted as charged, sentenced to a two-year period of community control and fined $250. Moning has appealed, raising two assignments of error for our review.
{¶ 4} The first assignment of error alleges that the state's prosecution of Moning was preempted by the federal Copyright Act, Section 106 et seq., Title 17, U.S. Code, and that, therefore, his conviction was void. Moning argues that the form and manner in which information is formatted and displayed in the law enforcement databases are protected by the federal Copyright Act, and that the Act prohibits unauthorized copying and reproduction of copyrighted material. Therefore, Moning argues, his prosecution for unauthorized access was preempted by the federal Copyright Act.
{¶ 5} Congress enacted the federal Copyright Act by expressly declaring its intention to preempt state law in the area of copyright protection. See Krapp v. McCarthy (1997), 121 Ohio App.3d 64, 67,698 N.E.2d 1049. The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright * * * are governed exclusively by this title." See Section 301, Title 17, U.S.Code.
 As we stated in Krapp v. McCarthy, supra, at 67, 698 N.E.2d 1049,
 The Copyright Act confers on the owner of the copyright "certain exclusive rights, and provides the exclusive source of protection for those rights. Simply stated, the rights protected are reproduction, adaptation, public performance, public distribution and public display." [Citations omitted.]
 Therefore, a state-law claim aimed at such an equivalent right is preempted if the work at issue is within the subject matter of the Copyright Act, and if the conduct asserted in a state-law claim is equivalent to any of the rights specified in Section 106 of the Act. [Citations omitted.]
 Copyright owners have the exclusive right to reproduce, perform, distribute, display, and prepare derivatives of their work. See Section 106, Title 17, U.S.Code. A right is "equivalent to one of the rights comprised by a copyright if it `is infringed by the mere act of reproduction, performance, distribution, or display.'" See State v. Perry, 83 Ohio St.3d 41, 42-43, 1998-Ohio-422, 697 N.E.2d 624, citing Baltimore Orioles, Inc. v. Major League Baseball Players Assn. (C.A.7, 1986), 805 F.2d 663, 667 (quoting Nimmer, Nimmer on Copyright [1985], Section 1.01[B][I]); Marobie-Fl., Inc. v. Natl. Assn. Of Fire Equip. Distribs. (N.D.Ill. 1997), 983 F. Supp. 1167, 1180. In order to overcome a preemption challenge based upon the equivalency of protected rights, a state-law claim must contain an "extra element" beyond copying, distributing, performing, displaying, or preparing derivatives of the work. See State v. Perry, supra, at 43, 697 N.E.2d 624. The "extra element" must distinguish the state-law claim and render it "qualitatively different" from a claim for copyright infringement. See id.
{¶ 6} R.C. 2913.04(B) prohibits gaining access to a computer, computer system, or information system without the consent of, or beyond the consent of, the owner or other person authorized to give consent. Moning was authorized to use the impound lot computer and the RCIC database solely for "legitimate law enforcement purposes." The record supports a finding that Moning used the impound lot computer to obtain access to the RCIC system and to run a query on Heileman out of animosity, and not for any legitimate law enforcement purpose, in violation of the rules of access for the RCIC database. See State v.Lebron (1994), 97 Ohio App.3d 155, 646 N.E.2d 481; Baker v. Kattelman
(1993), 92 Ohio App.3d 56, 634 N.E.2d 241. Therefore, Moning gained access to the computer and the RCIC database beyond the consent of the owner or those authorized to give consent.
{¶ 7} The element of obtaining access to the computer and the RCIC database in violation of the rules and restrictions, and thus beyond the consent of the owner or other person authorized to give consent, is sufficient to satisfy the "extra element" test and except the unauthorized-use-of property charge from the express preemption clause in the Copyright Act, Section 301, Title 17, U.S.Code. See State v. Perry,83 Ohio St.3d at 44, 697 N.E.2d 624. None of the exclusive rights protected by the Copyright Act are implicated. Moning's prosecution under R.C. 2913.04(B) was not preempted because the state-law claim under the unauthorized-use statute was qualitatively different from the exclusive rights protected by the Copyright Act. The first assignment of error is overruled.
{¶ 8} Moning's second assignment of error alleges that the trial court erred to his prejudice by improperly instructing the jury. "A trial court must give jury instructions that provide a correct, clear and complete statement of the law." Bryant v. Walt Sweeney Automotive,Inc., 1st Dist. Nos. C-010395 and C-010404, 2002-Ohio-2577, at ¶ 15, citing Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307,312, 649 N.E.2d 1219, and Marshall v. Gibson (1985), 19 Ohio St.3d 10,12, 482 N.E.2d 583. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Memorial Hosp. West (1990),53 Ohio St.3d 202, 208, 560 N.E.2d 165.
{¶ 9} The trial court instructed the jury that Moning was charged with unauthorized use of property, in violation of R.C. 2913.04(B). The trial court correctly instructed the jury that, in order to find Moning guilty, it had to find the following beyond a reasonable doubt:
 [O]n or about the 3rd day of September 2000, in Hamilton County, Ohio, the defendant knowingly gained access to, or attempted to gain access to, or caused access to be gained to a computer, or computer system or computer network, telecommunications device, telecommunications service or information service, to wit: The RCIC, LEADS, NCIC computer systems without the consent of, or beyond the express or implied consent of the owner of the computer, or computer system, or computer network, telecommunication device, telecommunication service, or information service or the person authorized to give consent of the owner.
(T.p. 708.)
In defining consent, the trial court stated,
 Consent may be either express or implied. Express consent is determined by written or spoken words of the persons involved. Implied consent is determined by the circumstances which surround those involved, including their words and acts, from which you the jury may infer that consent was given to the defendant to obtain and use the computer printout or information as it was used in this case.
(T.p. 709.)
{¶ 10} Moning argues that the words "as it was used in this case" improperly expanded the criminal allegation from merely obtaining access to the computer and the information database to using the printout or information obtained in an improper manner. In other words, Moning argues that the jury was invited to convict him of a crime because he misused the printout by handing it to Heileman. This was prejudicial, Moning argues, because he was not charged with any crime involving the use of the printout; he was charged only with improperly obtaining access to the computer and the information database.
{¶ 11} The trial court used the phrase about which Moning complains while instructing the jury on the definition of implied consent. The trial court correctly instructed the jury that in order to convict Moning it had to find that he gained access, attempted to gain access to, or caused access to be gained to the computer or the RCIC database. The court did not instruct the jury that it could find Moning guilty based upon his use of the printout or other information gained from the RCIC database. In the context of the jury instructions as a whole, the instruction did not mislead the jury and was not prejudicial to Moning.
{¶ 12} Moning also argues that the trial court misled the jury in the instructions on the affirmative defense of mistaken belief of authorization to use or operate the property. See R.C. 2913.03(C). The "property" to which the trial court referred in that instruction was clearly the computer terminal and the RCIC database, and not the printout obtained by Moning. The instruction was not erroneous. The second assignment of error is overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
Painter, P.J., and Hildebrandt, J., concur.