**[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 41.]**

THE STATE OF OHIO, APPELLANT, *v*. PERRY, APPELLEE.

[Cite as *State v. Perry*, 1998-Ohio-422.]

*Criminal law—Theft and fraud—Licensed software "uploaded" onto computer bulletin board without authorization from proper party—State criminal action under R.C. 2913.04 for unauthorized use of property is preempted by federal copyright laws.*

(No. 97-628—Submitted March 3, 1998—Decided August 19, 1998.)

APPEAL from the Court of Appeals for Hamilton County, No. C-960297.

———————

{¶ 1} Michael Perry was indicted under R.C. 2913.04 on two counts of unauthorized use, two counts of theft, and one count of possession of criminal tools in connection with his operation of a computer bulletin board. Perry filed a motion to dismiss the charges, claiming that prosecution of a violation of the unauthorized use statute is preempted by federal copyright laws. The trial court denied the motion. Subsequently, Perry pled no contest to the indictment and was found guilty on both counts of unauthorized use and not guilty on the remaining charges.[1]

{¶ 2} Perry appealed the trial court's refusal to preempt the state criminal action. The appellate court reversed the trial court and remanded the cause to the trial court with instructions to grant the motion to dismiss. The appellate court reasoned that the federal Copyright Act, Section 106 *et seq*., Title 17, U.S.Code, preempted the state criminal charges of unauthorized use.

{¶ 3} The cause is now before this court pursuant to the allowance of a discretionary appeal.

---

1. In the explanation of facts supporting Perry's no contest plea, the prosecutor conceded that prosecution of the theft counts "would require legal gymnastics that mainly would go beyond the realm of reason."

_____

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Steven W. Rakow*, Assistant Prosecuting Attorney, for appellant.

*Christine Y. Jones* and *Jay Clark*, for appellee.

*Frost & Jacobs, L.L.P.*, and *Stephen L. Gillen*, urging reversal for *amicus curiae*, Microsoft Corporation.

*Sandra E. Pinkerton* and *Robert L. Berry*, urging reversal for *amicus curiae*, Buckeye State Sheriffs Association.

_____

**MOYER, C.J.**

{¶ 4} We hold that prosecution of state charges of unauthorized use that are based solely upon the unauthorized uploading, downloading, and posting of computer software on a computer bulletin board is preempted by the federal copyright laws.

I

{¶ 5} The federal copyright laws expressly preempt any state law actions which govern "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 * * *." Section 301(a), Title 17, U.S.Code. The statute thus creates a two-part inquiry: (1) whether a work fixed in a tangible medium of expression is within the subject matter of copyright and (2) whether the rights addressed are equivalent to the exclusive copyright rights set out in Section 106, Title 17, U.S.Code.

{¶ 6} Section 106 of the copyright statute gives owners of a copyrighted work exclusive rights to reproduce, prepare derivatives of, perform, distribute, and display their work. Thus, "a right is equivalent to one of the rights comprised by a copyright if it 'is infringed by the mere act of reproduction, performance,

distribution or display.' " *Baltimore Orioles, Inc. v. Major League Baseball Players Assn.* (C.A.7, 1986*)*, 805 F.2d 663, 677 (quoting Nimmer, Nimmer on Copyright [1985], Section 1.01[B][I]); *Marobie-Fl, Inc. v. Natl. Assn. of Fire & Equip. Distrib*. (N.D.Ill.1997), 983 F.Supp. 1167, 1180.

{¶ 7} The preemption provisions of Section 301 of the Copyright Act are broad and absolute and are "stated in the most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection." Notes of the Committee on the Judiciary, H.R.Rep. No. 94-1476, U.S.Code Cong. & Adm. News (1976) 5659, 5746. Federal courts have repeatedly recognized that allowing state claims where the core of the complaint centers on wrongful copying would render the preemption provisions of the Copyright Act useless. See, *e.g*., *United States ex rel. Berge v. Bd. of Trustees of Univ. of Ala.* (C.A.4, 1997), 104 F.3d 1453, 1464*; Daboub v. Gibbons* (C.A.5, 1995), 42 F.3d 285, 290, and fn. 8 ("[I]f the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced."). The same effect would arise where issues of wrongful distribution or display are the core of the state law claim, as these rights are also exclusively governed by federal copyright laws and are expressly preempted under Section 301 of the Copyright Act.

{¶ 8} In order to survive a preemption challenge based on equivalency of protected rights, the state law claim must contain an extra element. *Del Madera Properties v. Rhodes & Gardner, Inc*. (C.A.9, 1987), 820 F.2d 973, 977. The extra element must not only distinguish the claim from a claim in copyright but also must change the state law so that it is *"qualitatively* different from a copyright infringement claim." (Emphasis in the original.) *Berge* at 1463 (citing *Rosciszewski v. Arete Assocs., Inc*. [C.A. 4, 1993], 1 F.3d 225, 229-230).

II

{¶ 9} A plea of no contest constitutes an admission of the facts alleged in an indictment, as well as the facts set forth by the state in its explanation of the circumstances surrounding the charge, but does not admit that those facts lead to a legal conclusion of guilt. We recognize that because preemption is a jurisdictional bar to prosecution, a no contest plea, or even a guilty plea, cannot support a conviction on a state charge that is preempted by federal law. However, we must look to the facts established pursuant to the no contest plea entered by Perry in this case to determine whether the admitted facts established any unauthorized use which is not preempted by the federal Copyright Act and which could support Perry's conviction.

{¶ 10} The indictment alleged that on or about June 16, 1995, Perry knowingly used or operated computer software belonging to Microsoft Corporation and knowingly used or operated computer software belonging to Clark Development Corporation, without the consent of the owner or person authorized to give consent. The state's explanation added the following relevant facts to those alleged in the indictment:

{¶ 11} In reference to count two of the indictment, alleging unauthorized use of Microsoft software, the state explained that Perry had been running a bulletin board for people to share computer software. The prosecutor informed the court that Perry was "exchanging and moving" computer software, including the Microsoft software referred to in the indictment.

{¶ 12} In reference to count four, alleging unauthorized use of Clark Development Corp. software, the state said, "The software or the fourth count of the indictment was the software that actually let his [Perry's] bulletin board work, so he was not only *distributing* that, but he was also using it to facilitate the distribution of other items * * *." (Emphasis added.)

**{¶ 13}** None of the uses or attendant circumstances argued by the state is sufficient to satisfy the "extra element" requirement that would except the charge of unauthorized use in this case from the express preemption clause in the copyright statute. Section 301, Title 17, U.S.Code. The facts established in the record simply do not support a finding that Perry engaged in any unauthorized use other than that which is preempted by federal copyright laws.

**{¶ 14}** The state has struggled to pinpoint which of Perry's activities are not preempted by federal copyright laws and has cited very little from the record to support its contentions. The state admits that charges based on unauthorized copying and unauthorized distribution are preempted by federal copyright laws and then argues without explanation that "copying" is something entirely different from "use."

**{¶ 15}** Significantly, the state even concedes at the end of its brief that the record in this case does not reveal whether the nature of Perry's use of the software was that of copying or of some other use. Though conceding that it failed to establish any non-copying use on the record at the time the no contest plea was accepted, the state, on appeal to this court, now contends "that the offense consisted of use beyond the scope of [a license agreement that also was not established on the record], not the act of copying." Based on the current case law and the explicit language of the copyright preemption clause, we cannot agree that the activities proved by the state constitute uses that are qualitatively different from the exclusive copyright rights.

**{¶ 16}** Uploading is copying. See, *e.g., Sega Enterprises, Ltd. v. MAPHIA* (N.D.Cal.1996), 948 F.Supp. 923, 931-932 (citing *MAI Systems Corp. v. Peak Computer, Inc.* [C.A.9, 1993], 991 F.2d 511, 518, certiorari dismissed [1994], 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640); *Playboy Ent., Inc. v. Frena* (M.D.Fla.1993), 839 F.Supp. 1552, 1556. Downloading is also copying. See, *e.g.*, *Sega; Marobie-Fl* at 1172. Unauthorized copying is an unauthorized use that is

governed by the copyright laws. See, *e.g.*, *Dowling v. United States* (1985), 473 U.S. 207, 217, 105 S.Ct. 3127, 3133, 87 L.Ed.2d 152, 160; *Daboub at* 290; *Berge* at 1464, fn. 4; *Brignoli v. Balch, Hardy & Scheinman, Inc*. (S.D.N.Y.1986), 645 F.Supp. 1201, 1205; *Motown Record Corp. v. George Hormel & Co*. (C.D.Cal.1987), 657 F.Supp. 1236, 1239-1240; 2 Nimmer, Nimmer on Copyright (1997), Section 8.08[A](1), at 8-113. Therefore, unauthorized uploading and unauthorized downloading are unauthorized uses governed by the copyright laws and prosecution of state charges of unauthorized use for uploading and downloading is preempted.

{¶ 17} Posting software on a bulletin board where others can access and download it is distribution. See, *e.g.*, *Playboy.* Unauthorized distribution is a use which is governed by the copyright laws. See, *e.g.*, *Dowling* at 217, 105 S.Ct. at 3133, 87 L.Ed.2d at 160. Unauthorized posting may also be viewed as facilitating unauthorized downloading or copying by a third party and as such is also a violation of the exclusive right of reproduction under the copyright laws. See, *e.g., Sega*; *Playboy*; *Central Point Software, Inc. v. Nugent* (E.D.Tex.1995), 903 F.Supp. 1057. Posting also implicates the display rights of copyright owners.[2] *Playboy* at 1556. It follows that unauthorized posting is an unauthorized use governed by the copyright laws and prosecution of state charges of unauthorized use for posting is preempted.

{¶ 18} As these are the only uses addressed by the state on appeal and because these are uses regulated exclusively by the copyright laws, we hold that Perry cannot be prosecuted for unauthorized use under the state statute.

---

2. As a result of the recommendations of the CONTU commission, Congress expressly amended the 1976 Copyright Act in 1980 to provide that computer software is to be treated as a literary work for purposes of the Copyright Act. See *Apple Computer, Inc. v. Formula Internatl.* (C.A.9, 1984), 725 F.2d 521, 524-525 (cited in Ballon, Emerging Law of the Internet [1997]*,* at 1177-1178). Therefore, the Copyright Act governs the public display of software. See Section 106, Title 17, U.S.Code.

III

{¶ 19} In an attempt to circumvent preemption, the state argues that the violation of a licensing agreement is an "extra element" rendering the charge of unauthorized use in this case qualitatively different from a charge of infringement under federal copyright laws. However, we find no reference to any license or licensing agreement in the record. As indicated above, neither the indictment nor the prosecutor's explanation establishes the existence of any license or licensing agreement, let alone any agreement to which Perry was a party. An unauthorized use charge obviously cannot be based on the terms of a licensing agreement that, so far as the record reveals, does not exist.

{¶ 20} The dissent concedes that no licensing agreement was admitted into evidence, yet bases its argument on a violation of this phantom agreement, saying that "issuance of a licensing or contractual agreement with commercially sold software is *virtually* automatic." (Emphasis added.) In essence, the dissent takes judicial notice of the likelihood that a licensing agreement accompanied the software, and despite the state's failure to introduce this admittedly essential piece of evidence, would find the likelihood of its existence sufficient to prove guilt beyond a reasonable doubt in this criminal case.

{¶ 21} Even if the court could take judicial notice of the existence of such an agreement for the first time, on appeal, in a criminal case, we would not know the terms of that agreement and, therefore, would not be able to determine whether the agreement extended beyond the scope of copyright protections or whether it was violated.

{¶ 22} The dissent asserts that Perry's no contest plea establishes, as admitted fact, that a licensing agreement existed, applied to Perry, was violated by Perry, and included uses beyond those protected by copyright law. This assertion is unfounded. Perry's plea *is* an admission to *some* type of unauthorized use. However, it is not an admission that he, without authorization, used the software in

every conceivable way. The state had every opportunity to clarify what unauthorized uses were the bases for the indictment. Perry requested a bill of particulars setting forth the specific and detailed conduct that was alleged to constitute the offenses described in the indictment, but no response and no such bill of particulars appear in the record. Reproduction, distribution, and display, uploading, posting, and downloading are all "uses" of the software. They are the uses alleged by the state and are all exclusively governed by copyright law.

{¶ 23} Further, a consumer software licensing agreement is generally treated as a contract between the copyright owner or "seller" of the software and the licensee or "buyer" and is therefore governed by general contract law and the U.C.C. See *ProCD, Inc. v. Zeidenberg* (C.A.7, 1996), 86 F.3d 1447; Ballon, The Emerging Law of the Internet (1997) 507; Practicing Law Institute—Patents 1163, at 1247. There can be legal differences between licenses and sales contracts that affect the parties' rights under the copyright doctrine of first sale, but these differences are not implicated in this case. Accordingly, in the context of this case, licenses are treated as general contracts. See *ProCD;* Emerging Law of the Internet, at 1247. What is important to this discussion is the fact that third-party users, whether authorized or unauthorized, are not parties to the licensing agreement and generally cannot be bound by its terms. Copyrights are rights "against the world," but a licensing agreement affects only its parties and, as such, any licensing agreement involving the software would be between the copyright owner and the purchaser. As the state originally brought theft charges against Perry, it contended that Perry did not purchase the software. Both the plea hearing transcript and the sentencing hearing transcript also reflect the state's theory that the software found in Perry's home was not purchased. Therefore, any licensing terms that did exist would not apply to Perry.

IV

{¶ 24} The state cites a host of distinguishable and non-supportive cases for the proposition that "unauthorized use" is not preempted even where the underlying use is covered by the copyright statutes. Specifically, the state relies on *Natl. Car Rental Sys., Inc. v. Computer Assoc. Internatl., Inc*. (C.A.8, 1993), 991 F.2d 426, 431 (involving no uses protected by copyright law), and *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv*., *Inc.* (C.A.9, 1992), 958 F.2d 896 (involving a conversion claim for unauthorized use of a tangible copy of a license).

{¶ 25} In *National*, the court found no preemption where a defendant violated a licensing agreement by violating a contractual restriction on how the software could be used. The defendant did not reproduce the software, did not distribute the software, did not display it, perform it, or otherwise make it accessible to others. In fact, the court in *National* even cited favorably other federal cases that hold that a breach of contract claim is preempted where the alleged breach is also an act that would constitute copyright infringement (*i.e*., reproduction, distribution, etc.). *National* at 434, fn. 6 (citing *Wolff v. Inst. of Elec. & Electronics Engrs., Inc.* [S.D.N.Y.1991], 768 F.Supp. 66, 69; *Howard v. Sterchi* [N.D.Ga.1989], 725 F.Supp. 1572, 1579; *Brignoli* at 1205). The *National* court did not challenge that proposition of law because the contract claim in *National* did not arise from unauthorized reproduction or distribution, or exercise of any other exclusive copyright rights. "[W]e do not need to decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive copyright rights is preempted." *National* at 434, fn. 6.

{¶ 26} *Rasmussen* involved a conversion claim. This case held only that prosecution of a conversion claim was not preempted by federal copyright laws where the defendant used someone else's Supplemental Type Certificate, without permission, in order to obtain a governmental privilege. The court held that although the first half of the preemption test was met (the certificate was within the

scope of the copyright laws), the rights violated by the unauthorized use were not equivalent to exclusive copyright rights. Kalitta violated Rasmussen's exclusive right to use the certificate for the specific purpose of obtaining a governmental privilege in the United States. The court explicitly stated that if Rasmussen were claiming an exclusive right to copy the certificate, or accompanying documents, his claim would "surely be preempted by the Copyright Act." *Id.* at 904.

{¶ 27} When a conversion claim is based on nothing more than plagiarism or the unauthorized taking or use of ideas (as opposed to the taking of a tangible item embodying the ideas), the elements of the claim are not qualitatively different from copyright infringement. *Berge* at 1464; *Garrido v. Burger King Corp.* (Fla.Dist.Ct.App.1990), 558 So.2d 79, 82; *Daboub.* The *Berge* court, at 1464, characterizes reliance on *Rasmussen* as "grasp[ing]," when used to support a claim that conversion *always* includes an extra element in relation to copyright.

{¶ 28} The dissent also cites *Sega.* However, the factual findings and the legal conclusions in *Sega* contradict the dissent's position. Sega did address and allow state claims of unfair competition and tradename infringement in addition to copyright infringement. The court did not discuss preemption. It is clear in the court's discussion, however, that the elements of the state claims are entirely different from the elements of copyright infringement and are based on qualitatively different actions. Uploading, downloading, and posting software are discussed exclusively under the copyright laws, whereas the state claims stem from the use of the SEGA tradename. In addition, the state claims require proof of the likelihood of confusion from use of the SEGA tradename and deceptive or fraudulent advertising.

{¶ 29} In contrast to the state claims alleged in *Sega*, the "unauthorized acts" presented by the state in Perry's case did not involve any property other than the software (tradename violations were not alleged), did not include any extra elements (deception or commercial advantage), and stemmed solely from

10

uploading, posting, and facilitating downloading. All of the uses alleged against Perry were addressed in *Sega* solely as copyright claims.

{¶ 30} There are a myriad of federal cases that do parallel the facts of this case and clearly support the holding that "unauthorized use" of copyrighted material is preempted by copyright law when the use in question is governed by federal copyright laws. See, *e.g.*, *Berge* at 1464; *Brignoli* (Breach of contract claim based on *unauthorized use* of copyrightable material falls squarely within Section 301 and is thus preempted.); *Motown Record Corp.* at 1239-1240 ("It appears from plaintiffs' complaint that their unfair competition claim is not qualitatively different from their copyright claim. The essence of plaintiffs [*sic*] complaint is derived from defendants [*sic*] alleged *unauthorized use* of a copyrighted work. The Court finds that plaintiffs' third cause of action for unfair competition is within the scope of Copyright Act and is therefore preempted by federal law." [Emphasis added.]); *Dowling; Daboub* at 290; *Sega*.

V

{¶ 31} We do not find the state's arguments on appeal to be persuasive. Neither do we find any indication in the hearing transcripts that an unauthorized use, other than copyright infringement, has been alleged. The hearing transcripts indicate, in reference to Perry's use of Microsoft software in count two, that the state did not allege an unauthorized use other than one that is equivalent to the exclusive usage rights governed in the copyright statute. Its only allegation was that Perry was "exchanging and moving" the software through the running of a bulletin board. This amounts to no more than reproduction and distribution by means of uploading and posting. Thus, we hold that Perry's prosecution on count two is clearly preempted.

{¶ 32} The state's original case on count four is somewhat stronger and not as easily dismissed. Insofar as count four relates to the distribution of Clark software, prosecution on the state's claim of unauthorized use is clearly preempted.

However, there is another alleged use on the record that could be considered "unauthorized use" under this count. The state argued that Perry was not authorized to use the Clark software and yet he did use it to "let his bulletin board work." It argued that using the software to work the bulletin board was an unauthorized use qualitatively different from any of the uses protected by copyright.

{¶ 33} The Ohio "unauthorized use" statute prohibits the use of the property of another without consent of the owner or someone authorized to give consent. We have examined each of these elements in the context of computer software.

{¶ 34} There is no question that running the software for the purpose it was intended is a use, and that it is a use different from reproduction, distribution, or display. The next question, then, is what property is being used? The record in this case does not substantiate a finding that Perry used someone else's hard copy of the software, so the property at issue could not be tangible property in the form of a disk or CD-ROM. If the state were relying on tangible property to fulfill this element, its claim would fail as a matter of law based on insufficiency of the evidence. Therefore, the property at issue must be the actual program that is contained on the disk or CD-ROM or whatever other tangible form of the software was discovered in Perry's home.

{¶ 35} Assuming that the property is the intangible program contained in the software, we move to the question of ownership. Who owns the program? The answer is problematic. No one owns the program exclusively. Clark most likely owns a copyright on the program (though this was not established on the record), but no one owns the actual information. Copyright is a property right in an " 'original work of authorship' " that is fixed in a " 'tangible form.' " Kolis & Zidar, Navigating Legal Issues on the Internet, Ohio Lawyer, May/June 1998, at 8. A copyright holder does not have exclusive dominion over the thing owned. The property interest in copyrighted materials is purposefully limited in nature, conferred not to provide reward or profit to the owners of the copyright but to

12

" 'promote the Progress of Science and Useful Arts.' " *United States v. LaMacchia* (D.Mass.1994), 871 F.Supp. 535, 537 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.* [1991], 499 U.S. 340, 349, 111 S.Ct. 1282, 1294, 113 L.Ed.2d 358, 371); *Data Gen. Corp. v. Grumman Systems Support Corp.* (C.A.1, 1994*)*, 36 F.3d 1147, 1187. Therefore, the United States Supreme Court has disapproved the imposition of criminal sanctions for claims of "unauthorized use" in the context of copyright infringement.

{¶ 36} "[T]he Government's theory here would make theft, conversion, or fraud equivalent to wrongful appropriation of statutorily protected rights in copyright. The copyright owner, however, holds no ordinary chattel. A copyright, like other intellectual property, comprises a series of carefully defined and carefully delimited interests to which the law affords correspondingly exact protections." *Dowling*, 473 U.S. at 216, 105 S.Ct. at 3133, 87 L.Ed.2d at 160.

{¶ 37} The only "property" at issue in Perry's case that has an owner and therefore could fulfill the elements of unauthorized use is the property right conferred by copyright law. Fatal to the state's argument, the federal copyright laws expressly preempt any state law actions which govern "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." Section 301(a), Title 17, U.S.Code. Therefore, in the absence of any facts on the record that would indicate that Perry, without authorization, used a disk, CD-ROM, or other tangible, physical manifestation of the Clark software belonging to someone else in order to set up his bulletin board, there can be no "unauthorized use" in this case that is not preempted.

VI

{¶ 38} We acknowledge that there are factual situations where prosecution of "unauthorized use" under the state statute would not be preempted, but this case does not present those facts. It is also important to recognize that preemption of Perry's criminal prosecution under the state statute does not leave Microsoft or

Clark without a remedy. They may pursue their rights under civil copyright law. Nor does preemption necessarily relieve Perry of criminal culpability. The federal copyright law includes a criminal cause of action, and charges could have been brought under that federal law. Section 506, Title 17, U.S.Code; Section 2319, Title 18, U.S.Code; No Electronic Theft (NET) Act, Section 2311 note, Title 18, U.S.Code, as amended by P.L. 105-147 (H.R. 2265) (Dec. 16, 1997), 111 Stat. 2678.

**{¶ 39}** For the foregoing reasons, we hold that prosecution of the state charge of "unauthorized use" in this case is preempted by federal copyright laws. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 40}** I agree with the majority that the proper test for preemption under the federal copyright laws is the "extra element test." However, I believe that the majority fails to correctly apply it in this case.

**{¶ 41}** The majority argues that uploading and display are preempted by federal copyright law, and that uploading and display occurred in this case. But I believe that such an analysis is incomplete.

**{¶ 42}** Perry uploaded a Microsoft software program onto a computer bulletin board that he had set up. This means that other users of the bulletin board could see, access, and copy the software without having to purchase their own licensed software. The state alleged that Perry used the software belonging to Clark Development Corporation without the express or implied consent of Microsoft or Clark. The state alleged that Perry's uploading of the software was an unauthorized use which permitted other unauthorized users access to the software without a

license, which could result in financial loss to Microsoft. Thus, the state charged Perry with and he was found guilty of unauthorized use of property under R.C. 2913.04(A), which reads:

"No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent."

{¶ 43} The Copyright Act provides that owners of copyrighted materials have the exclusive right to (1) reproduce the copyrighted work, distribute the work, prepare derivative works, and display or perform the work. See Section 106, Title 17, U.S.Code. In other words, the Copyright Act is the exclusive remedy for unauthorized copying. See *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.* (C.A.9, 1992), 958 F.2d 896, 904.

{¶ 44} The test for determining whether a state cause of action is preempted is the "extra element" test. *Mayer v. Josiah Wedgwood & Sons, Ltd.* (S.D.N.Y.1985), 601 F.Supp. 1523, 1535. Under the extra element test, a state claim will not be preempted by the Copyright Act where the state claim requires an extra element, beyond mere copying, preparation of derivative works, distribution, performance, or display, so as to make the state claim qualitatively different from the federal cause of action. *Computer Assoc. Internatl., Inc. v. Altai, Inc.* (C.A.2, 1992), 982 F.2d 693, 716.

{¶ 45} The issue in this case is whether unauthorized use is qualitatively different from copying or display so as to preclude preemption. The majority recognizes that no licensing agreement was admitted into evidence in the lower court. However, issuance of a licensing or contractual agreement with commercially sold software is virtually automatic. Although we do not know the actual language of such license or agreement, the indictment alleged that Perry knowingly used software belonging to Microsoft and/or Clark Development Corporation without consent of the owner or person authorized to give consent. Perry pled no contest to these allegations. This means that it is an admitted fact

that Perry used the software without authorization from either Microsoft or Clark. Crim.R. 11. Perry cannot now seek to repudiate this admission. *State v. Bird* (1998), 81 Ohio St.3d 582, 584, 692 N.E.2d 1013, 1015. These facts, although sparse, when combined with the assumption that virtually all commercially produced and sold software is limited in its use by a license or agreement, provide an adequate factual foundation to support the conclusion that Perry violated Ohio's unauthorized use statute.

{¶ 46} The next issue to be determined is whether unauthorized use is qualitatively different from unauthorized copying. A licensing agreement deals with the relationship between parties and defines the authorized use of a software package. See, *e.g., Bourne v. Walt Disney Co*. (C.A.2, 1995), 68 F.3d 621. Determining whether use of computer software is authorized involves an analysis of the licensing/user agreement rather than copyright law. *Natl. Car Rental Sys., Inc. v. Computer Assoc. Internatl., Inc*. (C.A.8, 1993), 991 F.2d 426, 431. Limitations on use must be determined from the licensing agreement, not copyright law. *Id*. at 432. Therefore, enforcement of a licensing agreement is qualitatively different so as to preclude preemption by federal copyright law. *ProCD, Inc. v. Zeidenberg* (C.A.7, 1996), 86 F.3d 1447.

{¶ 47} Perry's use of the software was to make it available to others to access and download without permission from the owner or person authorized to give consent. While a computer program must necessarily be copied to be used, the act of making the program available to others in violation of the agreement of the license is the "extra element" required for the state charge of unauthorized use. Therefore, allegations of unauthorized use are not preempted by the Copyright Act because unauthorized use and unauthorized copying are qualitatively different. *Natl. Car Rental Sys*., 991 F.2d at 431; *Zeidenberg*, 86 F.3d at 1454. The mere fact that the unauthorized use and the copying of the software coincided in this case does not diminish the qualitative difference between using and copying.

**{¶ 48}** The prosecution of Perry for unauthorized use under state law is not exclusive, however. Clearly, a federal charge under the Copyright Act is still permissible. *Sega Ent., Ltd. v. MAPHIA* (N.D.Cal.1996), 948 F.Supp. 923. In *Sega*, Sega games were uploaded onto a bulletin board (operated by the defendant) which allowed others to download such games (thereby bypassing the purchasing of their own games from Sega) for a fee, or to trade by uploading the user's own Sega game. In finding that the purpose of operating a bulletin board was to make available unauthorized copies of the Sega games to other users, the court determined that posting of the games to the bulletin board constituted unauthorized copying. But the federal court also went on to allow additional state charges of unfair competition and tradename infringement under California state law. Similarly, a federal copyright violation of unauthorized copying and a state charge for unauthorized use are not exclusive and Perry could have been charged with both.

**{¶ 49}** Thus, I would find that there are sufficient facts to find that Perry used the software in an unauthorized manner in violation of R.C. 2913.04. I would further find that a state charge under R.C. 2913.04 is not preempted by the Copyright Act because unauthorized use is qualitatively different from unauthorized copying. Accordingly, I would reverse the judgment of the court of appeals.

DOUGLAS and RESNICK, JJ., concur in the foregoing dissenting opinion.

_____