Hartwin R. PETERSON, et
ux., Appellants,

v.

MUTUAL SAVINGS INSTITUTION,
Appellee.

No. 13549.

Court of Appeals of Texas,
Austin.

Feb. 9, 1983.

Paul W. Jones, Jr., Jones & Bennett, Austin, for appellants.

Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

Before SHANNON, POWERS and GAMMAGE, JJ.

POWERS, Justice.

Hartwin R. Peterson, Sr. and his wife, Clara I. Peterson, appeal from a judgment of the trial court, based upon its directed verdict, that they take nothing in their suit against appellee, Mutual Savings Institution, entered at the close of the Petersons' case in chief. We will affirm the judgment of the trial court.

The Petersons sued Mutual on a theory that there existed between them a "fiduciary relationship" which gave rise to a duty on Mutual's part to ascertain by periodic inspections whether the construction of a residence on the Petersons' lot complied with the plans and specifications agreed upon in a contract between the Petersons and their builder.[1] The work did not com-

1. The fiduciary relationship and related duty are said to arise from the following series of events which the Petersons contend gave rise to an informal relationship between themselves and Mutual:

The Petersons began their relationship with Mutual in 1967 when they financed through Mutual their purchase of a residence on Oak Mountain Drive in Austin. They maintained a savings account at Mutual and, apparently, certificates of deposit. They visited Mutual's offices when they were in town.

When the Petersons thought of building a residence on Cat Mountain Drive, being the residence material to the present suit, they naturally turned to Mutual for advice, seeking a knowledgeable opinion about the general area around Cat Mountain Drive. They relied upon Mr. Gerst of Mutual to explain to them the homestead law of Texas. He suggested that

ply with such plans and specifications, including a contractual requirement that the work be done in a good and workmanlike manner. Accordingly, the Petersons alleged that Mutual breached its fiduciary duty, to the Petersons' injury, for which they sought money damages.

The record reflects that the Petersons entered into a contract with the builder to erect a residence on their lot for the sum of $85,000, to be constructed according to the plans and specifications agreed upon by the parties to that contract. The contract created and granted to the builder a lien on the Petersons' lot to secure the payment of their promissory note in the sum of $85,000, executed and delivered to the builder as evidence of an indebtedness in the amount of the construction price. The builder assigned to Mutual his contract with the Petersons and their promissory note as security for Mutual's loan to him. By this loan, the builder obtained the interim construction funds necessary to erect the residence. Mutual advanced the loan proceeds to the builder in a series of installments according to the progress of the work, as mandated by their agreement.

In a footnote, we have quoted from the Petersons' brief the facts relied upon by them to establish their allegation that a "fiduciary relationship" existed between them and Mutual. They are assumed to be true, leaving the issue to be whether a duty, of the kind alleged by the Petersons, emerges from the relationship established by the Petersons' evidence.

In oral argument on submission of this appeal, counsel for the Petersons quite frankly acknowledged that his theory is a novel one and that the authorities cited in his brief are all cases wherein the court was requested to impose a constructive trust on property as a remedy for the breach of a fiduciary duty arising from a formal or informal relationship in which confidence and trust had been placed in one person by another; and the person in whom such confidence and trust were reposed had, in breach of his fiduciary duty to the other, acquired property which in justice and equity belonged to the other. *Thigpen v. Locke,* 363 S.W.2d 247, 252–53 (Tex.1962); *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333, 336–37 (Tex.1966); *Peckham v. Johnson,* 98 S.W.2d 408 (Tex.Civ.

they borrow against their certificates of deposit to purchase the lot on Cat Mountain Drive, which they did. When they decided to commence construction, they again visited Mr. Gerst who told them that he would "take care of them." Mr. Gerst introduced them to a loan officer, Darel Conley, who took their loan application for a permanent loan. Mr. Conley suggested that they have the builder obtain his interim construction loan at Mutual because he would save a "point" by doing so, rather than at some other institution. Mr. Peterson made the suggestion to the builder and he did, in fact, obtain his interim loan at Mutual.

Evidence of the Petersons' reliance upon Mutual is found in their signing the documents necessary to effectuate the interim construction loan to the builder, doing so at Mutual's request even though they did not fully understand the legal significance of such documents. And when Mr. Peterson noticed, during the construction work, that there were deviations from the plans and specifications, he did not inform Mutual immediately "because the builder assured him that Mutual had not mentioned them." The Petersons "assumed that Mutual was safeguarding their investment and consequently felt that the deviations were not very serious. Mr. Peterson testified that he placed

great trust in Mutual Savings Institution, and that it was certainly more than a mere creditor in his eyes: 'At least we were going into something together.'"

It is apparent from all the circumstances that Mutual induced such trust by the Petersons. Mutual had control of the interim funds and approved the builder's draw requests. Mutual had notice of the contract and mechanic's lien agreement that specified that the house be built in a good and workmanlike promised to take care of the Petersons.

The Petersons reasonably believed that they were entitled to no less than that, as they considered themselves good customers of Mutual Savings Institution. The Petersons expected that [Mutual] would make good its promises and certainly expected that [Mutual] would act prudently in disbursing the funds. Under the circumstances, acting in a prudent fashion necessarily entailed inspections of the site as the work progressed. The parties were on an unequal footing as [Mutual] had full knowledge of the draws, while [the Petersons] did not. It is this justifiable reliance that was ignored and violated by [Mutual] when [it] failed to safeguard the best interests of [the Petersons].

App.1936), aff'd, 132 Tex. 148, 120 S.W.2d 786 (Tex.1938); *Hoover v. Cooke,* 566 S.W.2d 19 (Tex.Civ.App.1978, writ ref'd n.r. e.); *Linder v. Citizens State Bank of Malakoff,* 528 S.W.2d 90 (Tex.Civ.App.1975, writ ref'd n.r.e.). In each of these cases, the court refused to impose such a trust but did acknowledge that a fiduciary relationship may be informal as well as formal.

We hold that Mutual had no duty, which would give rise to a corresponding right in the Petersons, to rely upon inspections by Mutual to assure that their residence was constructed in accordance with the plans and specifications agreed upon by the builder and the Petersons. Mutual was not a party to the contract between the builder and the Petersons wherein the plans and specifications were agreed upon. The Petersons neither alleged nor proved an independent contract between themselves and Mutual wherein the latter promised to perform any duty in that regard, nor any contract between Mutual and the builder wherein the Petersons were anything more than incidental beneficiaries. The duty that the Petersons seek to establish may therefore not be found in contract or the negligent performance of a contractual duty. *Jones v. George,* 61 Tex. 345 (1884); *International Printing Pressmen & Assistants' Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (Tex.1946); *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (Tex.1947); *Carruth v. Valley Ready-Mix Concrete Co.,* 221 S.W.2d 584 (Tex.Civ.App.1949, writ ref'd); 17A C.J.S. Contracts §§ 520, 522 (1963). May such a duty be found in the common law of Tort? Though not raised by the parties, we point out that it is possible for one to incur a duty of care toward another, in certain circumstances, simply by the former's undertaking to perform a service to the latter, either for consideration or gratuitously, when the former should recognize the service as being necessary for the protection of the latter's person or property. Restatement (Second) of Torts § 323 (1965). This section of the Restatement provides that one who undertakes to render a service of that kind for another is subject to liability to the other

for "physical harm resulting from his failure to exercise reasonable care to perform the undertaking," provided: "(a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." The rule of the Restatement has been applied to cases involving only economic injury and the Supreme Court of Texas has held that such a cause of action does not exist, in the circumstances posed by the Restatement, unless the affirmative undertaking is pursued *for the benefit of the injured person* and the injured person has suffered injury not from the negligence *alone* but from his *reliance upon the undertaking. Colonial Savings Association v. Taylor,* 544 S.W.2d 116, 119–20 (Tex.1976). We find in the Petersons' case no evidence that Mutual undertook inspections of the construction work for the Petersons' benefit, aimed at assuring that the work complied with the plans and specifications contained in the contract between the Petersons and the builder. In fact, we find in the Petersons' evidence the following judicial admission by Mr. Peterson:

Q. ... Now, nobody at Mutual ever told you anything about inspections did they?

A. No one at Mutual told me anything about inspections, that is correct.

While the Petersons may have relied upon Mutual's right to inspect the work periodically and in connection with the builder's "draws," or periodic advancements of construction funds by Mutual, this is not sufficient under the Restatement, which would require that Mutual pursue the inspections for the benefit of the Petersons, and not for Mutual's own benefit in assuring that the funds were applied to the work, thereby maintaining an equivalency between the total funds advanced and the value of Mutual's security. We find in the evidence nothing to suggest that Mutual undertook to inspect the work for any other purpose. Thus, we find no duty in the common law of tort.

Finding no duty in Mutual, of the kind alleged by the Petersons, we affirm the judgment of the trial court.