**NORTHWEST BANK, Appellant,**

v.

**Susan J. GARRISON, M.D. and Gregory C. Gerber, M.D., Appellees.**

No. 01–93–00559–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 31, 1994.

Randall A. Pulman, Houston, for appellant.

Bruce Ian Schimmel, Houston, for appellees.

Before DUGGAN, ANDELL and HUTSON–DUNN, JJ.

## OPINION ON MOTION FOR REHEARING

HUTSON–DUNN, Justice.

Appellees have filed a motion for rehearing, which we grant. They have also re-

quested an en banc ruling which we deny. The opinion issued by this Court on December 16, 1993, is withdrawn, and the following opinion is issued in lieu of the earlier one.

This is an appeal from an order granting a temporary injunction. TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(4) (Vernon Supp.1994). Appellant, Northwest Bank, contends that the trial court abused its discretion by temporarily enjoining appellant from foreclosing on appellee's property.

## BACKGROUND

In late 1990, appellees, Dr. Gregory Gerber and his wife, Dr. Susan J. Garrison (the Homeowners), decided to purchase a lot and build a custom home in the city of West University Place, Texas. The Homeowners entered into a contract with A. Jay Homes, Inc. (Contractor) for the construction of their home.

The Homeowners arranged financing through Northwest Bank (the Bank). The Bank entered into a loan agreement whereby it agreed to loan the Homeowners $660,000 for the purchase of the lot and construction of the home. In conjunction with the loan agreement, the Homeowners executed (1) a purchase money note in the amount of $179,200 for the purchase of the real estate, secured by a deed of trust, and (2) a construction note in the amount of $480,800. This note was secured by a builder's and mechanic's lien that was executed between the Homeowners and the Contractor, and then assigned to the Bank. Both the purchase money note and the construction note were payable to the Bank.

While negotiating the terms of the construction contract, the Contractor told Dr. Gerber that he could save approximately $60,000 if he did not use an architect, but had the Bank act as the project inspector instead. Without contacting the Bank and gaining its prior approval, Gerber agreed to delete any references to "architect" in the construction contract, and replace them with the term "lending institution."

Construction began on the home, and the Homeowners made 20 requests to the Bank for advancements to pay costs incurred by the Contractor during the course of construction. In March 1992, the Bank decided that there were some problems with the construction and refused to make further advances on the Contractor's draws. Construction ceased at that time.

In November 1992, the Homeowners filed suit against the Contractor for failure to build their home in a good and workmanlike manner. The Bank was not a party to this suit. In March 1993, the Homeowners also made demands on Temple Development, Raul Caesarez, the city of West University Place, and Barry Kearns d/b/a Bear Corporation Construction Services.

The Homeowners' notes matured on January 15, 1993, and they and the Bank tried for several months to work out some way for the construction to continue, but to no avail. After the notes' maturity, the Homeowners refused to make payments, alleging that the Contractor had not built the home in a good and workmanlike manner, or in accordance with the construction contract's plans and specifications.

The Bank declared the Homeowners' loans to be in default and sought to foreclose on the property on June 1, 1993. The Homeowners immediately filed this action seeking both damages and injunctive relief to prevent the foreclosure. The Homeowners pled several causes of action, including breach of contract, deceptive trade practices, negligence, gross negligence, and breach of the duty of good faith and fair dealing.

On May 26, 1993, the trial court conducted a hearing on the Homeowners' application for a temporary injunction. Both sides introduced evidence, and the trial court found that the Homeowners had a probable right of recovery, and that an injunction was necessary to prevent damage to the Homeowners' credit.

## REQUIREMENTS FOR INJUNCTIVE RELIEF

■ To be entitled to a temporary injunction, an applicant must plead a cause of action, show a probable right to recover on that cause of action, and show a probable injury in the interim. *Sun Oil Co. v. Whit-*

*aker,* 424 S.W.2d 216, 218 (Tex.1968); *University of Tex. Medical Sch. v. Than,* 834 S.W.2d 425, 428 (Tex.App.—Houston [1st Dist.] 1992, writ requested). The trial court need not explain its reasons for believing that the applicant has shown a probable right to final relief, but it must state why injury will occur if the relief is not granted. *State v. Cook United, Inc.,* 464 S.W.2d 105, 106 (Tex.1971).

## APPELLATE COURT'S STANDARD OF REVIEW

On appeal, unless we find the trial court clearly abused its discretion, we will not disturb the injunction. *Moreno v. Baker Tools, Inc.,* 808 S.W.2d 208, 211 (Tex.App.—Houston [1st Dist.] 1991, no writ). The trial court abuses its discretion when it misapplies the law to the established facts or when the evidence does not reasonably support the findings of probable injury or probable right of recovery. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975).

## THE PROPRIETY OF THE ORDER

In its first point of error, the Bank contends that the trial court erred in issuing the temporary injunction because the Bank had no duty to inspect the Contractor's work to determine if it was being completed in a good and workmanlike manner. The Bank contends that each of the Homeowners' causes of action hinges upon whether the Bank had a duty to inspect the construction for the Homeowners' benefit. Without such a duty, the Bank argues the Homeowners have no cause of action and no probable right of recovery.

### Common Law Duty in Tort

The case of *Peterson v. Mutual Savings Institution,* 646 S.W.2d 327 (Tex.App.—Fort Worth 1983, no writ), also involved claims made by homeowners against their lender because of the lender's failure to conduct periodic inspections of their home during construction. The court in *Peterson* concluded that the lender had breached no contractual duty to the homeowners because it was not a party to the construction contract that allegedly gave rise to the duty to perform inspections. However, the court also

noted that "it is possible for one to incur a duty of care toward another, in certain circumstances, simply by the former's undertaking to perform a service to the latter, either for consideration or gratuitously, when the former should recognize the service as being necessary for the protection of the latter's person or property." Id. at 329. In *Peterson,* the court held that even though the lender had the right to perform inspections, there was no evidence to show that such inspections were intended to benefit the homeowners.

In support of their contention that the Bank undertook a common law duty to perform inspections, the Homeowners in this case refer to two pieces of evidence that were presented to the trial court. First, there is evidence that when the Homeowners submitted their first Application and Certificate for Payment, AIA Document G702, to the Bank for advancements to pay costs incurred by the Contractor during construction, Bruce Mercer, the Bank's loan officer, signed the document in the space reserved for the architect's signature. The Application and Certificate for Payment contains a section entitled "Architect's Certificate For Payment," which provides:

> In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

The above recitation is followed by the signature, "OK RBM per inspections 5–10–91." It is undisputed that "RBM" refers to Robert Bruce Mercer, the Bank's employee. Though Bruce Mercer signed in the space reserved for the architect's signature on the first Application and Certificate for Payment, he did not do so in most of the subsequent applications. However, the Homeowners argue that by signing the document in the space reserved for the architect, the Bank

undertook a common law duty to carry out the duties of the architect.

Secondly, in further support of their contention that the Bank undertook a common law duty to perform inspections for their benefit, the Homeowners refer to a conversation that took place between Bruce Mercer and Dr. Gerber in October 1991. Dr. Gerber testified that he called Mercer and asked about some apparent discrepancies between the draws authorized and the actual amount of work that had been completed by the Contractor. Gerber testified that Mercer replied, "That's not atypical, Greg ... I'll handle it." The Homeowners contend that Mercer's statement indicates a willingness on the Bank's part to see that the construction was completed properly.

We do not decide today whether the two pieces of evidence relied on by the Homeowners are legally sufficient to give rise to a common law duty in tort for the Bank to perform inspections on behalf of the Homeowners. In order to obtain a temporary injunction, the Homeowners are not required to establish that they will finally prevail on the merits. *Transportation Co. of Texas v. Robertson Transp., Inc.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Egan v. Woodell,* 720 S.W.2d 169, 171 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). The only question before the trial court was whether the Homeowners were entitled to an order to preserve the status quo pending trial on the merits. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978); *Univ. of Tex. Med. Sch. v. Than,* 834 S.W.2d 425, 428 (Tex.App.—Houston [1st Dist.] 1992). The controlling question is whether the evidence discloses a bona fide dispute. *Egan,* 720 S.W.2d at 171.

The evidence presented to the trial court discloses that a bona fide dispute exists about whether the Bank voluntarily undertook a duty toward the Homeowners to see that their house was constructed according to the specifications. This issue should first be resolved in the trial court. Therefore, we conclude that the trial court did not err by issuing a temporary injunction to preserve the status quo pending the resolution of the Homeowners' claims.

## Temporary Injunction Bond

■ In their cross-point of error, the Homeowners contend that the trial court erred by setting the bond for the temporary injunction too high. After the temporary injunction was granted, the trial court set the bond at $100,000. The Homeowners contend that this amount was excessive because there was no evidence to show that the collateral would be damaged during the pendency of the temporary injunction. In support of this contention, the Homeowners introduced expert testimony to the effect that the home, i.e. the collateral, would not be damaged during the pendency of the temporary injunction, provided that it was fenced and inspected twice a year.

A trial court has considerable discretion in setting the amount of a bond for a temporary injunction. *Biodynamics, Inc. v. Guest,* 817 S.W.2d 128, 131 (Tex.App.—Houston [14th Dist.] 1987, writ dism'd); *El Paso Dev. Co. v. Berryman,* 729 S.W.2d 883, 889 (Tex.App.—Corpus Christi 1987, no writ). There is nothing in the record to show that a $100,000 bond on a $660,000 note is unreasonable. The Homeowners' cross-point of error is overruled.

## CONCLUSION

Because there exists a bona fide dispute on at least one of the causes of action asserted by appellees, we hold that the trial court did not abuse its discretion in granting the application for temporary injunction. We further hold that the trial court did not abuse its discretion in setting the bond for the temporary injunction at $100,000.

The judgment of the trial court is affirmed.

Chief Justice OLIVER–PARROTT and Justices COHEN, O'CONNOR, WILSON and HEDGES vote to deny the motion for rehearing en banc.

Justice MIRABAL dissents without opinion.