**Opinion issued March 14, 2017.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00358-CV

————————————

## SERGEY EFREMOV, Appellant

## V.

## GEOSTEERING, LLC, Appellee

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 16-DCV-229519

## MEMORANDUM OPINION

Plaintiff/appellee GeoSteering LLC sued defendant/appellant Sergey Efremov seeking a temporary restraining order, a temporary injunction, a permanent injunction, and damages. The trial court entered a temporary injunction in GeoSteering's favor, and Efremov brought this interlocutory appeal.

# BACKGROUND

The service of "geosteering" involves monitoring drilling operations using real-time data. GeoSteering is an oil field service company that provides geosteering services. GeoSteering developed custom proprietary geosteering software, RigComms.

Efremov is a scientist, mathematician, and a computer programmer. He began doing work for GeoSteering in 2009. GeoSteering alleges he was an employee; Efremov claims he was an independent contractor. The parties did not have a written contract governing the relationship.

At issue in this case is software source code developed by Efremov. Efremov developed algorithms in Matlab, a programing language with an ".m" file extension. When GeoSteering determined a particular algorithm would be commercially useful, a GeoSteering software engineer would rewrite the Matlab .m file in C# programing language so that the algorithm could be implemented in RigComms. Efremov would assist GeoSteering's software engineer, explaining and testing the code as necessary during implementation.

GeoSteering's petition alleges that from November 2009 until approximately February 2014, Efremov freely shared access to the software source code with GeoSteering through Dropbox. Because Efremov was consistently updating Dropbox files, GeoSteering did not discover that Efremov had stopped sharing

2

code until the later part of 2015. In 2013, at GeoSteering's suggestion, Efremov compiled all the algorithms he was working on into a single executable file "toolbox" named the GS_Toolbox. Executable files do not reveal the source code, and require a passcode license key generated by Efremov which expires, denying access, after thirty or sixty days and requires renewal by Efremov. GeoSteering alleges that in January 2014, unbeknownst to GeoSteering, Efremov removed all the .m files that had not yet been implemented in RigComms, eliminating GeoSteering's access to the source code.

GeoSteering considers both the software source code and the GS_Toolbox to be its confidential, proprietary, and trade secret information. In its petition, it requests a declaratory judgment that Efremov is an employee of GeoSteering and that all software source code and the GS_Toolbox is the sole property of GeoSteering as the employer. GeoSteering also seeks damages for breach of contract, promissory estoppel, conversion, money had and received, breach of fiduciary duty, and trade secret misappropriation. GeoSteering also requested that the trial court issue a temporary restraining order, and then an injunction.

The trial court entered a temporary injunction in GeoSteering's favor. Its order stated that that Efremov is an employee of GeoSteering and accordingly all software source codes and the GS_Toolbox developed is the sole property of the employer, GeoSteering. It stated that Efromov breached his fiduciary duty to

3

GeoSteering and breached his agreement with GeoSteering. The temporary injunction ordered Efremov to provide access to GS_Toolbox and prohibited Efremov from using, copying, marketing, or trying to license the software code.

## ISSUES ON APPEAL

Efremov raises the following issues in his appellant's brief:

1. "The state court had no jurisdiction over Plaintiff's claims because they were preempted by federal law."

2. "The temporary injunction was granted in error because the status quo between the parties had not been such that Plaintiff was in possession of the source code."

3. "The district court should not have a granted a temporary injunction because Plaintiff had not established a probability of recovery on its causes of action."

4. "The trial court erroneously found that Dr. Efremov was an employee of GeoSteering, all the while no written contract between the parties existed and the statute of frauds required a writing."

5. "The court made erroneous and unnecessary factual findings and legal pronouncements."

## TEMPORARY INJUNCTION

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). A temporary injunction is an

4

extraordinary remedy and does not issue as a matter of right. *Id*. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*. (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). A probable right to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id*. at 610.

## STANDARD OF REVIEW

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of discretion. *TMC Worldwide*, 178 S.W.3d at 36 (citing *Walling*, 863 S.W.2d at 58). We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id*. (citing *Johnson v. Fourth Ct. App.*, 700 S.W.2d 916, 918 (Tex. 1985)). In reviewing an order granting or denying a temporary injunction, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Id*. (citing *CRC–Evans Pipeline Int'l v. Myers*, 927 S.W.2d

259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ)). "Abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision." *Tanguy v. Laux*, 259 S.W.3d 851, 856 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## PREEMPTION

In his first issue, Efremov argues that GeoSteering's claims are preempted by the federal Copyright Act, rendering the Fort Bend County state district court without jurisdiction. GeoSteering contends that its request for a declaration that Efremov is its employee and that GeoSteering owns the source code is not preempted. We agree with GeoSteering.

### A. Applicable law

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 U.S.C. § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 U.S.C. §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Claims for relief that arise under the Copyright Act fall within the exclusive jurisdiction of the federal courts, to the exclusion of any state court. 28 U.S.C. § 1338(a). A two-part test determines whether a state law claim is preempted by the Copyright Act. *Spear Mktg. Inc. v. BancorpSouth Bank*, 791

6

F.3d 586, 594 (5th Cir. 2015). First, the claim is examined to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. *Id.* Second, "the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.*

## B. Analysis

Under the two-part test for determining preemption, GeoSteering's claims satisfy the first prong, as source code is recognized as copyrightable work under 17 U.S.C. § 102. *E.g.*, *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 259 (5th Cir. 1988) ("Congress amended the Copyright Act in 1974 to include computer programs in the definition of protectable literary works."); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1249 (3d Cir. 1983) ("[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version."). The parties, however, dispute whether GeoSteering's claims satisfy the second prong.

Efremov relies primarily on this Court's decision in *Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). In that case, Butler sued his former employer, Continental Airlines, alleging that "Continental copied and misappropriated the computer macros [Butler] authored"

while he was employed at Continental. *Id.* at 648. *Butler* held that the first prong of preemption was satisfied because "[c]omputer programs fall within the subject matter of copyright," *Id.* at 650 (citing *Daboub v. Gibbons*, 42 F.3d 285, 289–90 (5th Cir.1995)). We next analyzed whether Butler's claims satisfied the second preemption prong, i.e., whether the claim protects rights equivalent to any of the exclusive rights of a federal copyright, ultimately deciding that it did:

> A state law claim is equivalent to a copyright claim where the core of the state law theory of recovery goes to wrongful copying. *Daboub*, 42 F.3d at 289–90. This inquiry requires a comparison of the nature of the rights protected under the Copyright Act with the nature of the state law rights being asserted. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). A state law cause of action is equivalent to the rights granted by the Copyright Act if "the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). In other words, a state law claim is equivalent to federal copyright law rights if the elements of the state law cause of action would not establish qualitatively different conduct by the defendant than the elements for an action under the Copyright Act. *Alcatel*, 166 F.3d at 787; *Daboub*, 42 F.3d at 290. "Federal courts have repeatedly recognized that allowing state claims where the core of the complaint centers on wrongful copying would render the preemption provisions of the Copyright Act useless." *State v. Perry*, 83 Ohio St.3d 41, 697 N.E.2d 624, 627 (1998); *see United States ex rel. Berge v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1464 (4th Cir. 1997); *see also Daboub*, 42 F.3d at 290 & n.8.

*Id.* at 650–51; Efremov also cites the Fifth Circuit's decision in *Alcatel v. DGI Technologies*, which held that the plaintiff's state law misappropriation claim was preempted by the Copyright Act because the acts that formed the basis of plaintiff's misappropriation claim "touched on interests protected by the Copyright

8

Act, including (1) the reproduction of its software, (2) the use of the software in the preparation of derivative works; and (3) the distribution of these works for commercial gain." 166 F.3d 772, 789 (5th Cir. 1999).

GeoSteering responds that its claims are not preempted because its claims are to establish ownership of the source code, not to seek a remedy provided under the Copyright Act.[1] GeoSteering cites several cases that have relied on this distinction in determining some state-law claims were not preempted. For example, in *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, Ultraflo brought claims against a former employee and his new employer in federal district court "for unfair competition by misappropriation, misappropriation of trade secrets, conversion, and civil conspiracy . . . for their alleged misappropriation and use of Ultraflo's design drawings." 823 F. Supp. 2d 578, 586 (S.D. Tex. 2011). Citing *Alcatel*, the *Ultraflo* court held that the state law claims for unfair competition by misappropriation, conversion of intellectual property, and civil conspiracy claims were preempted by the Copyright Act. *Id*. at 586–88. The Ultraflo court, however, held that Ultraflo's trade secret misappropriation claim was not preempted because

---

[1] It also argues that reference to federal litigation following this Court's decision in *Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) demonstrates that claims for "breach of contract and breach of fiduciary duty are not preempted because the claims each respectively contain an 'extra element' beyond the requirements of a federal copyright claim, which makes the claims 'qualitatively different.'" *Butler v. Continental Airlines, Inc.*, No. Civ. A. 01-2194, 2001 WL 1509545, at *3 (S.D. Tex. 2001).

9

it contains the element of breach of a confidential relationship, which is not an element of a Copyright claim. *Id*. at 587 (citing *Complete Pharmacy Res., Ltd. v. Feltman*, No. 04:04–CV–3477, 2005 WL 1949540 (S.D. Tex. Aug. 12, 2005) ("this claim [of misappropriation of trade secrets] includes additional element(s) distinguishing it from a copyright infringement claim" because of the existence of the required element of breach of a duty of trust or confidence to the plaintiff by the defendant).

Ultraflow also sought a declaratory judgment, and the federal district court evaluated whether that claim arose under federal law to confer federal court jurisdiction. *Id*. at 585. The court ultimately concluded that, as pleaded, Ultaflow's request for a declaration was a state-law, rather than federal-law, claim. *Id*. The court reasoned that, as pleaded, Ultraflow's claim was for ownership of the copyright, not a claim for relief under the Copyright Act:

> A claim arises under the federal Copyright Act "if and only if the complaint is for a remedy expressly granted by the Act," like a suit for infringement or to recoup royalties. *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.). *See Goodman v. Lee*, 815 F.2d 1030 (5th Cir. 1987). The plaintiff in *Harms* sought a declaratory judgment that he was the sole owner of renewal copyrights to songs. *Id*. "At issue was whether one of the defendants had previously assigned his interest in the copyrights to the plaintiff's agent, or whether the defendant had retained his interest and had later validly assigned it to a second defendant." *Kane v. Nace Intern.*, 117 F.Supp.2d 592 (S.D. Tex. 2000) (citing *Harms*, 339 F.2d at 824–25). The plaintiff did not assert any claim of infringement and did not seek relief under the Copyright Act. *Id*. Because the case turned not on interpretation of the federal Copyright Law but merely on the

10

Plaintiff's rights under an assignment, a question of state law, there was no federal jurisdiction. *Harms*, 339 F.2d at 828 ("The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough" to give rise to federal subject matter jurisdiction.).

While state law claims over ownership to a copyright as a matter of state law do not "arise under" the Copyright Act for the purposes of federal jurisdiction, the Fifth Circuit has recognized that claims requiring construction of the Copyright Act create jurisdiction when the actions are based on rights created in the Act. *Kane v. Nace Intern.*, 117 F. Supp. 2d at 596. *See Goodman*, 815 F.2d 1030 (federal jurisdiction existed when plaintiff claimed a right to be listed as the co-author of copyrighted material and receive proceeds as such). The court in *Goodman* distinguished between cases over "a contract, the subject of which was a copyright" for which no federal jurisdiction exists, and cases that "involve[] the validity of the copyright itself under the Copyright Act." *Goodman*, at 1032.

*Id*. at 584.

GeoSteering seeks a declaration that "Efremov is an employee of GeoSteering and accordingly that all software source code and GS_Toolbox developed is the sole property of the employer, Geo Steering." We agree with GeoSteering that because it seeks a declaration related to ownership and its declaratory judgment claim does not turn on a particular interpretation or application of the Copyright Act, the claim is not preempted.

Likewise, GeoSteering's breach-of-contract and breach-of-fiduciary-duty claims turn on whether Efremov was an employee, not on an interpretation of the Copyright Act. This is because GeoSteering asserts that it owns the source code and algorithms Efremov developed by virtue of Efremov's employment, and that

11

Efremov breached a fiduciary duty arising from that employment relationship. Because this is an accelerated appeal of a temporary injunction, and because the trial court's temporary injunction order is premised upon these three claims, we need not determine in this interlocutory appeal whether GeoSteering's additional claims for promissory estoppel, conversion, money had and received, duty, or trade secret misappropriation are preempted.

## PROBABLE RIGHT OF RECOVERY – BREACH OF CONTRACT

In his third issue, Efremov argues that the trial court's temporary injunction is improper because GeoSteering has "not established a probability of recovery on its causes of action." Relatedly, Efremov contends in his fourth issue that the trial court's conclusion that Efremov was GeoSteering's employee (a predicate for finding a probable right of relief for breach of contract) is erroneous as a matter of law because there was no written employment contract between the parties. GeoSteering responds that it presented evidence supporting a "probability of recovery on its claims for breach of contract, breach of fiduciary duty, trade secret misappropriation, and conversion, any one of which is sufficient to form the basis for injunctive relief." GeoSteering also disputes that the statute of frauds required the parties contract to be in writing.

## A. Applicable Law

The phrase "probable right of recovery" is a term of art in the injunction context. *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 638 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). "To show a probable right to recover, an applicant need not show that it will prevail at trial." *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). Nor does a finding of probable right of recovery indicate a trial court's evaluation of the probability that the applicant will prevail at trial. *Id.* (citing *Anderson Oaks (Phase I) Ltd. P'ship v. Anderson Mill Oaks, Ltd.*, 734 S.W.2d 42, 44 n.1 (Tex. App.—Austin 1987, no writ) ("[P]robable right to recover does not imply that the applicant for temporary injunction must offer evidence and persuade the judge to find from that evidence the adjudicative facts necessary for the applicant to prevail on the merits, based on probabilities. . . . The hearing on temporary injunction does *not* constitute a *mini* trial, in advance, wherein the judge predicts the applicant's chances of success at the real trial, based upon the judge's estimate of where the truth probably lies concerning the adjudicative facts and the law made applicable thereto by the pleadings in the case.")). Consequently, a finding of probable right to recover has no precedential effect on the case at the trial stage. *Id.*

"Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Id.* (citing *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961). The evidence must be sufficient to raise "a bona fide issue [] as to [the applicant's] right to ultimate relief." *183/620 Group Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.); *Nw. Bank v. Garrison*, 874 S.W.2d 278, 281 (Tex. App.—Houston [1st Dist.] 1994, no writ).

**B. Analysis**

The trial court's temporary-injunction order states that the evidence at the temporary injunction hearing demonstrated that Efremov was "a full-time employee on a work for hire basis to assist in the development of algorithms to facilitate and automate the geosteering of wells."[2] It also noted that Efremov was

---

[2] A "work made for hire" is--

(1)    a work prepared by an employee within the scope of his or her employment; or

(2)    a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

paid an agreed monthly salary and that he was "necessarily required to provide open access to GeoSteering and share any work produced while in GeoSteering's employment." The order states the court's conclusion that "Efremov is an employee of GeoSteering and accordingly all software source codes and the GS_Toolbox developed is the sole property of the employer, GeoSteering."

Applying the appropriate standard of review, our analysis consists of determining whether GeoSteering pleaded a breach-of-employment-contract claim and, if so, whether it produced some evidence that tends to sustain it. GeoSteering maintains that Efremov was contracted as a "work for hire" employee, in which case computer programs he created in the course of his employment are the property of GeoSteering. Efremov on the other hand argues that he was an independent contractor, meaning he retained ownership in his programs.

The trial court's temporary injunction on GeoSteering's breach-of-contract claim is premised on the court's determination (for purposes of the temporary injunction), that "GeoSteering hired Efremov as a full time employee on a work for hire basis." The determination of whether an individual is an employee or independent contractor for purposes of the "work for hire" doctrine is generally made using the common law of agency. *See Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166 (1989). Generally, that determination is made

17 U.S.C. § 101 (West 2017).

15

by reference to the following factors: (1) the skill required, (2) hiring party's right to control manner and means, (3) source of the instrumentalities and tools, (4) location of the work, (5) duration of the relationship, (6) whether hiring party has right to assign additional projects to hired party, (7) hiring party's discretion over when and how long hired party works, (8) method of payment, (9) hiring party's role in hiring and paying assistants, (10) whether work is part of hiring party's regular business, (11) whether hiring party is in business, (12) provision of employee benefits, and (13) tax treatment of the hired party. *Id*. at 751.

Efremov points to the *Community for Creative Non-Violence* factors he contends favor categorizing his time at GeoSteering as an independent contractor rather than an employee. Namely, he emphasizes evidence that (1) GeoSteering provided him with little training, (2) GeoSteering did not provide him benefits, (3) and that GeoSteering reported its payments to Efremov on a Form 1099 rather than a W-2. In response, GeoSteering contends that there was evidence at the temporary-injunction hearing that the parties agreed that Efremov was employed on a "work for hire" basis, and that this evidence supports the trial court's conclusion. In addition, GeoSteering claims that the applying the relevant factors to the evidence at the temporary injunction hearing support the trial court's finding. It emphasizes that Efremov was a salaried employee, GeoSteering had control over the time and what he worked on when. GeoSteering also points to the length of the

16

relationship and GeoSteering's training of Efremov. Finally, GeoSteering notes that Efremov represented that he was an employee of GeoSteering until this litigation.

"[A]s the trial court functions as the fact finder in a temporary injunction hearing, an abuse of discretion does not exist where the trial court bases its decision on conflicting evidence." *Sharma v. Vinmar Int'l Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)). As the reviewing court, we must draw all legitimate inferences from the evidence in the light most favorable to the trial court's order granting a temporary injunction. *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). Accordingly, we do not weigh and apply the *Community for Creative Non-Violence* factors in the first instance as Efremov requests we do. Rather we only determine if the trial court abused its discretion, i.e., if its conclusion is "so arbitrary that it exceeded the bounds of reasonable discretion." *Sharma*, 231 S.W.3d at 419. Applying this standard to the evidence presented at the temporary injunction hearing, we agree with the trial court that GeoSteering established a probable right of recovery on its breach-of-employment-contract claim.

17

Susan Bruce, President and part owner of GeoSteering, testified that she founded GeoSteering in 2002. The company's main asset is its RigComms program, and the company would not generate revenue without it. After RigComms became fully functional since 2004, two software engineers worked on it full time the first two or three years, and after that one full-time engineer. The current software engineer is Jim Grenadier, the other owner of GeoSteering.

The entire geosteering process, including the RigComms software, is largely manual. Bruce explained that, in late 2009, the company began looking for a mathematician or physicist with an eye towards partially automating the geosteering process. Specifically, GeoSteering needed someone to develop algorithms that would be built into RigComms. Efremov was brought in to serve in this role full time, with hopes for "significant algorithmic development within perhaps six months, nine months." Although Efremov was unable to develop fully automating algorithms, he developed various ones for different aspects of geosteering. When one was sufficiently and successfully tested, Grenadier would translate them from Matlab language to RigComms's language, C#, for incorporation into RigComm.

Bruce testified that, until the summer of 2013, Efremov fully and freely shared the Matlab code with herself, Grenadier, and a third GeoSteering employee, Iain Wilson, through emails and shared access to a DropBox folder. As far as

Bruce knew, "all the algorithms were always available in the DropBox folder, and we could just go and download it, any of them, whenever we wanted." In 2013, Bruce and Wilson were finally too busy to test Efremov's algorithms and asked Mr. Shannon, a long-time friend who geosteered wells for GeoSteering, if he would have time to take over their roles of testing with Efremov to determine when algorithms were ready for RigComms.

Efremov balked at giving access to Shannon, a third party, because the algorithms were completely transparent in the .m files. GeoSteering's principals came up with the idea of compiling the algorithms in a binary file so that they could be tested, but the source code not read. Efremov put the new binary file, which he named GS_Toolbox, in the DropBox and removed the individual .m files. At that time, it did not occur to Butler, Wilson, or Grenadier that Efremov was restricting their access to the files. After that time, he freely emailed them any m-file they asked for. Gradually, however, it seemed to become increasingly harder to get the codes.

An November 2015 email chain was introduced into evidence, in which Efremov states, in response to requests from Bruce and Wilson for source code contained within GS-Toolbox:

> Although I have no problem of bringing you source code one time, we all would [be] unreasonably inconvenienced if I had to do that on every new version of the program which I often update a few times a day, as I develop it. It is more rational to transmit executable rather

than source code which contains plenty of files; if a single file did not get transmitted to you correctly the probability that the source code will not get transmitted correctly is many times higher. I do not recommend clouds or e-mail as means of sending the code.

. . . .

Please do not suspect that I will walk away from you and Iain without giving you the code. I can't do that. But the code is changing, needs to work as executable, and I am updating it every day. I have ideas that need to be implemented for the benefit of the interpretation process.

Bruce was reassured by their email exchange, as it reflected that Efremov was not suddenly trying to withhold source code. Bruce had become recently concerned because Wilson had asked Efremov in September 2015 to physically bring to Bruce and Wilson a copy of the code contained in GS_Toolbox, in its entirety, and had made clear that it "this was absolutely critical to us, that this was very important to our continuing relationship, that we wanted the code, because at that time, we were very worried that it was becoming difficult to access code, pieces of code from Mr. Efremov." Efremov agreed, but had given various excuses for not doing so.

Bruce acknowledged that Efremov's wages were reported on a 1099, as were the amounts paid to everyone who worked for GeoSteering. That is how the company's accountant recommended wages be reported when the company began in 2002. In 2014, the company changed accountants, and on advice of the new accountant, Grenadier's salary was changed to be a guaranteed payment reported

20

on a K-1. Then, in early 2015, the company's accountant recommended the company seek legal advice about how various people's wages should be reported, "not because of a change in the law, but because of a change in the way the law was being interpreted." The company has since retained counsel to look at this issue for everyone. Despite reporting Efremov's wages on a 1099, Bruce always considered Efremov to be an employee. She testified that Efremov was given the option in 2009 of joining GeoSteering with a set salary or operating as a consultant (which would be intermittent, project-based work with potentially higher income). He chose to earn a set salary that started at $10,000 per month. By 2015, he had received two raises and was making $14,000 per month.

His salary was not dependent upon a particular project or the number of hours he worked, and Efremov did not invoice GeoSteering for services. Efremov took several vacations while he worked for GeoSteering. He gave notice to the company before his vacations, and he was paid for the vacation time he took. Bruce testified that "when we hired Dr. Efremov, we made it plain that it was work for hire, and, therefore, all IP would belong to us."

When the company had Efremov actually performing geosteering, he was not paid in the same manner as geosteering contractors. Geosteering shifts are 12-hours long, and contractors get paid $500 working at home or $1,000 working at the rigsite. Bruce told Efremov in an email introduced at the hearing, "[o]thers,

21

like you and me, who get a salary, don't get any day rate. You can get time off instead, for extra hours worked."

Efremov came to GeoSteering with no knowledge or skills specific to geosteering, so the company invested significant time to training him about the industry. In addition to developing software code, there were times that Efremov worked for GeoSteering at a rig site or used RigComms for GeoSteering. Efremov was expected to work full-time for GeoSteering.

Bruce explained that she had the ability to tell Efremov what to do and when to do it. All of the data Efremov used to create algorithms were provided by GeoSteering. Much of it was proprietary client data that would not be readily available to Efremov otherwise. GeoSteering considered the contents of the GS_Toolbox to be its trade secrets. GeoSteering has invested almost $1 million in Efremov's salary over the years, but the value to GeoSteering is in the ability to take the code from the GS_Toolbox, modify as needed, and rewrite to incorporate into RigComms. The end result would hopefully be the improved speed and efficiency in interpreting wells.

Because Efremov made each binary expire, even GeoSteering access to the GS_Toolbox as an executable would be eliminated shortly after the date of the temporary injunction hearing. Efremov also added a passcode that only he knows.

Bruce first noticed that Efremov had added a copyright notice on the GS_Toolbox on November 18, 2015, which alarmed her. She immediately made an appointment to seek legal advice about Efremov's suddenly claiming ownership. On November 23, 2015, Efremov sent Grenadier an .m file containing the same copyright notice. These were the first times anyone with GeoSteering had seen the notice. Bruce and Wilson met with counsel on November 25, 2015.

Iain Wilson also testified that he made it clear to Efremov when he was hired that his development of algorithm was work for hire owned by GeoSteering. In a November 24, 2009 email, Efremov mentioned an idea he just came up with dealing with "how to process nuclear logs for geosteering" and inquired about whether the company would patent new ideas or keep them as trade secrets. Wilson responded:

> For the current work you're doing for us, it's usually considered to be "work for hire." We pay you to solve a problem or develop an algorithm and the result belongs to us. However, there may well be other ideas that arise at the same time. We don't do what the big companies do. They say all ideas you have while they're paying belong to them. That is not necessarily reasonable. The important thing is to be clear about what does and does not belong to you or us.

Wilson also testified that he told Efremov in person that his work for GeoSteering would be work for hire at a lunch they attended after this email exchange.

Efremov also testified at the temporary injunction hearing. His version of the conversation at the same lunch is different than Wilson's. Efremov testified that it was agreed at the lunch that he would be a consultant. He owns a company named Efremov Consulting. That company has never earned any revenue or had any clients outside of the payments by GeoSteering that Efremov characterized as payments to his consulting company. Efremov said that Wilson told him at the lunch that the results of his work would "belong to us and you."

Efremov believes he was an independent contractor because he holds a d/b/a in the name of Efremov Consulting. He conceded, however, that he never showed his d/b/a certificate to anyone at GeoSteering. He also pointed to the 1099s (rather than W2s) that GeoSteering issues, and stressed that he is "a professional" who "work[s] independently," does "not take instructions," and "nobody controls [his] time." Efremov also testified that, when he first met with GeoSteering, he was told that Grenadier was the company's only employee, and that the company could not handle another employee because of its size. He took that to mean he was a consultant. He paid for his own computers and software.

Efremov also testified that, in 2012, after he met with Bruce to demonstrate the results of his program to date, she suggested that they patent it. Bruce told Efremov that the company would pay for the patent lawyer and that GeoSteering would own the patent and Efremov would be the author. He disagreed, and told

her that "since this is my idea, I would also have to own it." He testified that the topic was never brought up again.

Until this lawsuit was filed, Efremov's LinkedIn profile listed, under the category of experience, "GeoSteering, LLC" from 2009 – present. After this lawsuit was filed, Efremov changed the entry to delete reference to GeoSteering and replace it with Efremov Consulting from 2009 – present.

Efremov testified that the contents of the DropBox belong to him. GS_Toolbox has a copyright notice in the help section, and it lists Efremov as author. Efremov testified that he added the copyright notice in 2012, but that he did not mention it to anyone at GeoSteering. Efremov testified that it would be possible to run the GS_Toolbox without seeing the copyright notice. At some point in mid 2015, Efremov knows that Bruce visited the help menu in GS_Toolbox to determine its expiration date, and Efremov believes that was close enough to the copyright notice that she should have noticed that as well.

Efremov testified that he has never shared the entire GS_Toolbox with anyone at GeoSteering. He shared components of it because "they asked politely"; it was out of goodwill.

In sum, there was conflicting evidence at the temporary-injunction hearing about what the parties agreed to with regard to Efremov's employment status. But the trial court is the sole judge of credibility, and it was entitled to believe the

evidence that GeoSteering and Efremov expressly agreed that he would be an employee with a set salary and his work would be work for hire.

Efremov insists that the trial court's conclusion that Efremov was an employee was erroneous as a matter of law because, even if the evidence supported a finding that there was an oral employment contract, Texas's statute of frauds required a writing. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a)–(b)(6) (West 2005). The statute of frauds, however, bars only oral contracts that cannot be completed within one year. *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982). Indefinite-term employment contracts are considered performable within one year and therefore do not fall within section 26.01(b)(6) of the statute of frauds. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974); *see also Iacono v. Lyons*, 16 S.W.3d 92, 95 (Tex. App.—Houston [1st Dist.] 2000, no pet) (so long as contract can be performed within one year, the "fact that the entire performance within one year is not required, or expected, will not bring an agreement within the statute" of frauds).

Here, there was evidence that the parties agreed that Efremov would be an indefinite-term employee. In fact, the evidence reflects that GeoSteering assumed that his employment would last between three and nine months. We thus reject Efremov's argument that Texas's statute of frauds required the parties' employment agreement to be in writing.

Efremov additionally claims that the federal Copyright Act mandates that the parties' employment agreement be in writing, as it provides that a transfer of copyright ownership is not valid unless the conveyance instrument is in writing and signed by the owner of the rights conveyed. 17 U.S.C. § 204(a) (West 2017) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

Efremov's argument assumes, however, that he owned the code that he wrote while working for GeoSteering. Section 201 provides that the employer is the author of works created by an employee in the scope of employment:

(a)    Initial Ownership.--Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.

(b)    Works Made for Hire.--In the case of a work made for hire, *the employer or other person for whom the work was prepared is considered the author for purposes of this title*, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C § 201 (West 2017) (emphasis added).

Section 204(a) requires a writing by a copyright owner to transfer that copyright to subsequent owner. Given the trial court's conclusion that GeoSteering owned the code written by Efremov in the scope of Efremov's

27

employment, GeoSteering was considered the initial owner, rendering the requirement that transfers be in writing inapplicable.

We conclude that GeoSteering has demonstrated a probable right of recovery on its breach of contract claim by "by alleging a cause of action and presenting evidence that tends to sustain it." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Tanguy v. Laux*, 259 S.W.3d 851, 856 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision.").

We overrule Efremov's third and fourth issues.

## STATUS QUO

In his second issue, Efremov contends that, because he had "never been sharing the GS_Toolbox source code with GeoSteering in the years preceding plaintiff's filing of the initial complaint," the trial court's temporary injunction "setting out an arrangement between the parties that had not heretofore existed" is not maintaining the status quo. GeoSteering responds that the parties' status quo is the sharing of the source code and GS_Toolbox between GeoSteering and Efremov.

28

## A. Applicable Law

"Status quo is defined as 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Transp. Co. of Texas v. Robertson Transps., Inc.*, 261 S.W.2d 549, 553–54 (Tex. 1953)). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Lifeguard Benefit Servs., Inc. v. Direct Medical Network Sols., Inc.*, 308 S.W.3d 102, 114 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Benavides ISD v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)).

## B. Analysis

To determine the last, actual, peaceable, noncontested status preceding the pending controversy, we look to evidence of the parties' practices up until the dispute giving rise to the request for the temporary injunction occurred. *Intercontinental Terminals Co.*, 354 S.W.3d at 892. The trial court heard evidence that the code Efremov wrote was freely shared with GeoSteering principals from 2009 through the point in 2013 that the .m files were aggregated into the GS_Toolbox. There was evidence that the GS_Toolbox was created at GeoSteering's suggestion for security reasons, i.e., so that the files could be given

to Shannon to test without giving Shannon access to the source code. Efremov continued to freely provide GeoSteering with any calculations or .m files it requested. Bruce testified that Efremov agreed to bring physically bring a copy of all the source code to her house after giving excuses about why he did not want to email it or use a cloud-based service. As late as November 2015, Efremov reassured Bruce in an email that he would not "walk away" without providing Bruce and Wilson the source code.

Efremov also contends that less restrictive alternatives were available to the trial court. But, as GeoSteering points out, Efremov cites no authority for his argument that the trial court must consider "less restrictive" means in this context.[3] The test is the *actual* status quo; not the *alternatives* to the status quo. We also agree with GeoSteering that the record from the temporary-injunction hearing does not support Efremov's argument that the trial court could impose a "less restrictive" status quo.

The trial court did not abuse its discretion by determining that GeoSteering having access to the source code within GS_Toolbox was the status quo.

---

[3] GeoSteering acknowledges that less-restrictive alternatives have been considered a valid consideration in constitutional cases involving First Amendment issues. *See, e.g.*, *Operation Rescue-Nat'l v. Planned Parenthood*, 937 S.W.2d 60, 79 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998).

**FINDINGS OF FACT AND LEGAL PRONOUCEMENTS**

In his fifth issue, Efremov argues that the trial court made several unnecessary dispositive findings in its temporary injunction order that amounted to summary judgment in GeoSteering's favor on several of its causes of action. Because the factual and legal determination at the temporary injunction stage are not binding and have no preclusive effect at trial, we reject this argument. *See, e.g.*, *Intercontinental Terminals Co.*, 354 S.W.3d at 897.

**CONCLUSION**

We affirm the trial court's interlocutory order. All pending motions are dismissed as moot.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

31